John DOE, Appellant,

v.

Stanley S. HARRIS, et al.

No. 82–1297.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 25, 1982.
Decided Dec. 17, 1982.

George J. Mendelson, Washington, D.C., with whom Michael A. Lubin, Washington, D.C., was on the brief, for appellant.

Charles F. Flynn, Asst. U.S. Atty., Washington, D.C., with whom Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Charles L. Reischel, Deputy Corporation Counsel, Washington, D.C., for the District of Columbia, also entered an appearance for appellees.

Before WRIGHT and GINSBURG, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Plaintiff-appellant Doe appeals from the district court's refusal to entertain his claim for declaratory and injunctive relief and its dismissal of his complaint as moot. We hold that Doe's complaint retains vitality. Accordingly, we reverse the district court's judgment and remand the case for further proceedings.

## I. BACKGROUND

### A. *Facts*

On October 22, 1981, an Assistant United States Attorney informed Doe, by letter, that he was a target for criminal prosecution in a pending grand jury investigation of fraudulent collection of unemployment compensation. The letter proposed a November 3, 1981, meeting between Doe and the prosecutor, and informed Doe that if he could not afford counsel he could be represented by a court-appointed attorney at the meeting. The purpose of the meeting was to apprise Doe of the evidence against him, provide him an opportunity to plead guilty to multiple felony charges, and enlist his cooperation in the investigation.

The day before the meeting, November 2, the prosecutor informed Doe's appointed counsel of the grand jury investigation. On November 3 the prosecutor subpoenaed Doe's claim file, and any medical records maintained for Doe, from the Veterans Administration ("VA"). The principal medical records involved were psychiatric; Doe had undergone treatment by VA doctors for paranoid-schizophrenia. On November 5, without notifying Doe or his attorney, the VA turned over the requested records.

When Doe's counsel learned of the VA's release of the psychiatric records, he informed the prosecutor that Doe's rights had been violated and that Doe would initiate legal action if the prosecutor did not take specified steps to protect Doe's rights. Doe demanded that the prosecutor (1) return the records to the VA; (2) tender all copies to Doe's counsel; (3) seal any notes made from the records for possible later evidentiary use; (4) make no presentation of the records to the grand jury; (5) allow no further dissemination of the records; (6) make no further efforts to obtain Doe's records; and (7) make no use of the information contained in the records. A week later, Doe added a demand that this relief be embodied in a district court consent order. Brief for Appellees at 4. Defendant-appellees imply they were willing to comply with (1)–(7), *id.* at 4. It is undisputed, however, that the United States Attorney's Office would not agree to any acknowledgement that Doe's rights had been violated or to a consent decree incorporating the specific relief Doe requested. Doe states categorically that defendant-appellees never offered to accede to any of his requests prior to the commencement of this action. Reply Brief for Appellant at 6.

Doe filed suit on January 6, 1982, naming as defendants the Assistant United States Attorney who subpoenaed the VA records, other federal and District of Columbia law enforcement officials, and two VA officials. His complaint alleged violation of his rights under the fourth, fifth, and sixth amendments, the D.C. patient-physician privilege, the D.C. Mental Health Information Act of 1978 (D.C.Code § 6–2002(a) (1981)), and federal law requiring that VA records be kept confidential (38 U.S.C. § 3301(a)). *Cf. Hawaii Psychiatric Society v. Ariyoshi,* 481 F.Supp. 1028 (D.Hawaii 1979). Doe sought court orders that the files be transferred to Doe's counsel and that defendants' notes relating to the files be sealed, a judgment declaring the subpoena and release of his medical files illegal, and an injunction barring the defendants "or anyone acting on their behalf" from reacquiring the files or disseminating their contents.

On January 19, without interposing an answer to the complaint, the federal defendants moved to dismiss the case as moot. Declarations submitted by officers of the United States Attorney's Office and the District of Columbia Metropolitan Police Department informed the district court that no use had been made of the VA records in connection with the grand jury matter, that in fact the records were of no value to the

investigation concerning fraudulent collection of unemployment compensation, and that defendant law enforcement officers contemplated no future acquisition or use of the records. Brief for Appellees at 5–6. The declarations also asserted that no copies of the records had been made, that no notes had been taken, and that few persons had had access to the records. The defendants offered to surrender the documents to the district court. On February 26, 1982, the district court granted the defendants' motion to file the documents under seal, and dismissed the entire action as moot.

### B. *The* Davis *test as applied by the district court*

In *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1384, 59 L.Ed.2d 642 (1979), the Supreme Court restated the two conditions that must be satisfied if a federal court is to dismiss a case as moot. First, the court must conclude "with assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur" (citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); *SEC v. Medical Committee For Human Rights,* 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972)). *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975), clarifies that in non-class actions such as this one the chance of recurrence must be evaluated with reference to the expectation that "the same complaining party [will] be subjected to the same action again." Second, under the *Davis* formulation, it must be plain that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation" (citing *DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974); *Indiana Employment Security Division v. Burney,* 409. U.S. 540, 93 S.Ct. 883, 35 L.Ed.2d 62 (1973)).[1] The district court identified as the pivotal question "whether the facts of [Doe's] case meet the tests set out in *Davis.*"[2]

The first *Davis* condition—no expectation of recurrence—was met, according to the district court, because officials of the D.C. Metropolitan Police and the United States Attorney's Office represented that no one in their offices would divulge the contents of Doe's files or seek to reacquire the files from the VA. Memorandum Opinion, *supra* note 2, at 3–4. Doe argued that these assurances were inadequate to establish the absence of any reasonable expectation of recurrence of an official demand for and surrender of the VA records without notice to Doe. The court rejected Doe's argument as insubstantial. As the district court viewed the case, the Assistant United States Attorney's declaration that the psychiatric files were useless to the grand jury investigation made it "extremely unlikely that the documents [would] be subpoenaed again." *Id.* at 4. The court noted but did not address the VA's complete silence on the possibility of future releases of Doe's files. *Id.*

The district court further determined that the second *Davis* criterion had been met—the effects of the alleged violation, the court concluded, had been completely eradicated. Though the Assistant United States Attorney's declaration to the court contained a reservation—Doe's files might be subpoenaed again if Doe were to raise an insanity defense in a later criminal prosecution—this had no bearing on the mootness of Doe's instant complaint; any use of the VA records in response to an insanity defense, the district court said, would be an

---

**1.** In *Davis* a class of Mexican-Americans challenged as discriminatory Los Angeles County's procedures for selecting candidates to fill temporary emergency needs in the county fire department. The Supreme Court applied the two-pronged test and concluded that the controversy had become moot. 1) There was no reasonable expectation that the alleged discrimination would recur; the temporary, emergency firefighter shortage had ended, and alternative, acceptable means of screening job applicants had been implemented. 2) Pending Supreme Court review the County had hired minority recruits in sufficient numbers completely to eradicate the effects of the alleged discrimination.

**2.** *Doe v. Ruff,* Memorandum Opinion, No. 82–0025 (D.D.C. Feb. 26, 1982) 3.

·independent matter, wholly unrelated to the prior release of the files. *Id.* at 3.[3] Doe also claimed that his treatment by VA psychiatrists had been impaired by the disclosure of his records, and would continue to be undermined if the court failed to enjoin or declare unlawful future releases of the records without notice to him. In support, Doe tendered a psychiatrist's affidavit that disclosure of a paranoid's records would inhibit treatment and hinder the patient's recovery. The district court, however, found that the "generalized statements" of a psychiatrist who had never examined Doe did not deserve substantial weight. *Id.* at 5. On these grounds the court declared that Doe "ha[d] not shown any ineradicable harm or any future harm from the subpoena." *Id.*[4]

## II. DISCUSSION

■ We conclude from the parties' presentations that defendant-appellees have not shouldered the heavy burden of demonstrating mootness[5] and that neither of the *Davis* conditions is met in this case. We leave for discrete determination on remand the separate question whether Doe's complaint, as it stands or as Doe may amend it (*see infra* note 10), presents a claim on which relief is appropriately granted. *Cf. United States v. W.T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953) (whether injunctive relief should be granted is a question distinct from mootness).

Turning to the first *Davis* condition, it is hardly apparent that the official conduct Doe assails—demand for records the VA maintains for Doe, and release of those records *without notice to Doe*—will not recur. Defendant-appellees maintain adamantly that the subpoena and surrender of the VA files were lawful. *See infra* note 6. Their declarations to the district court show only that the particular law enforcement personnel who saw Doe's psychiatric files (a) have not disclosed or copied their contents, and (b) have not and will not use or reacquire them in relation to the grand jury investigation of Doe's receipt of unemployment compensation. But this showing, which the district court found adequate, cabined the recurrence inquiry too tightly.

The declaration of the Assistant United States Attorney reserved one circumstance in which he might seek to obtain Doe's psychiatric records again: "Of course, if Mr. Doe should be indicted, and if he should raise the defense of insanity, the prosecution would take appropriate action in accordance with the law to contest the defense." Appellees' Appendix at 17. It thus appears from this record that Doe remains under investigation for fraudulent receipt of unemployment compensation, and that the likelihood that he will be indicted is appropriately described as a reasonable expectation. He is not simply one of a large number of VA patients as to each of whom the chance of recurrence is presumably slight. *Cf. Weinstein v. Bradford, supra* (plaintiff was apparently no different from other ex-convicts). Given Doe's history of psychiatric troubles, it is also reasonably likely that his counsel would assert insanity or otherwise put his mental condition in issue as a defense. Since the defendants stand on the legality of their conduct, it seems probable that they would follow the same course in subpoenaing and releasing Doe's records without notice. Thus, we think there is a reasonable expectation that this plaintiff will again be subjected to conduct he alleges to be unlawful.

---

**3.** The district court noted precedent supporting the propriety of government use of Doe's psychiatric files if Doe were to raise an insanity defense in a criminal prosecution. *Id.* at 5 (citing *United States v. Brawner,* 153 U.S.App. D.C. 1, 471 F.2d 969, 994–95 (1972) (en banc); *Andrews v. United States,* 403 F.2d 341, 342–43 (9th Cir.1968); *Ruebush v. United States,* 206 F.2d 810, 812–13 (10th Cir.1953)).

**4.** The district court also rejected Doe's subsidiary arguments that the defendants had violated Fed.R.Crim.P. 6(e) by disclosing grand jury information to police officers, and that Fed.R. Crim.P. 41(e) buttressed his claim that his complaint was not moot. Neither argument has been renewed on appeal.

**5.** *See County of Los Angeles v. Davis, supra,* 440 U.S. at 631, 99 S.Ct. at 1383 ("The burden of demonstrating mootness 'is a heavy one.'") (citing *United States v. W.T. Grant Co., supra,* 345 U.S. at 632–33, 73 S.Ct. at 897).

Moreover, when a complaint identifies official conduct as wrongful and the legality of that conduct is vigorously asserted by the officers in question, the complainant may justifiably project repetition, albeit in a different setting, and involving different official actors. *Cf. Hall v. Board of School Commissioners of Conecuh County,* 656 F.2d 999, 1000–01 (5th Cir.1981); *Ray Baillie Trash Hauling, Inc. v. Kleppe,* 477 F.2d 696, 701 (5th Cir.1973), *cert. denied,* 415 U.S. 914, 94 S.Ct. 1410, 39 L.Ed.2d 468 (1974); *Tinetti v. Wittke,* 479 F.Supp. 486, 489 (E.D.Wis.1979), *aff'd,* 620 F.2d 160 (7th Cir.1980); 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3533 at 284 (1975). Doe's complaint fits this description.

Defendant-appellees' insistence, underscored at oral argument, that their conduct was lawful indicates a risk we cannot dismiss as negligible that Doe may encounter repetition of the official conduct that gave rise to this suit. If any United States Attorney's Office should believe Doe's medical records relevant to a future investigation, a similar subpoena, defendant-appellees assert, would properly issue.[6] Particularly in view of Doe's troubled psychiatric condition, this prospect is not plainly remote. *Cf. In re Ballay,* 157 U.S.App.D.C. 59, 482 F.2d 648, 651 (1973).

More prominent in our determination that the proffered assurances against recurrence are inadequate, the VA defendants remained silent in the district court and on appeal. They supplied no indication in either forum that the VA would not again, upon official request, release Doe's files without affording him notice and opportunity to object. Doe's economic circumstances preclude treatment by a private psychiatrist. He remains dependent on the VA's services. His asserted apprehension concerning further VA disclosure of his existing or future records cannot be dismissed as fanciful.

As to the second *Davis* condition, we find it far from plain that defendant-appellees' response to Doe's demands "completely and irrevocably eradicated the effects of the alleged violation." Doe complains of past and continuing harm. He alleges that his future treatment by the VA will be impaired absent at least the declaratory relief he now seeks. He also asserts injury stemming from the undisputed fact that his files were sought and released; this injury, he contends, has not been wholly eradicated and warrants redress.[7] Since Doe made no

---

6. Federal law provides that VA files are confidential, 38 U.S.C. § 3301(a), but authorizes the VA to release files in response to "process of a United States court," 38 U.S.C. § 3301(b)(2). Appellees contended at oral argument that a grand jury subpoena is within the scope of that exception. We express no view on this contention, which was not aired in the district court or briefed on appeal; we decide only that if appellees' position reflects official policy it is questionable to describe repetition of the conduct Doe challenges as "extremely unlikely."

If appellees had taken the position that the subpoena of Doe's files was an unfortunate mistake we might incline toward the district court's view that the risk of recurrence was slight. Other courts have agreed that the government's refusal to concede official wrongdoing bears on the likelihood of recurrence central to a mootness inquiry. *See Consumers Union v. Veterans Administration,* 436 F.2d 1363, 1365 (2d Cir.1971); *Doe v. United States Civil Service Comm'n,* 483 F.Supp. 539, 554 (S.D.N.Y.1980). But at oral argument appellees' counsel firmly rejected a suggestion that the subpoena seeking Doe's VA records was a mistake:

Q. Your view of this case is that what the Veterans Administration did was appropriate, and that it might happen again because it's lawful, but it's unlikely it would happen again because it's unlikely this record would be subpoenaed again?
A. That's right.
Q. So in response to [the] question that there are no regulations *against* this, on the contrary, you say that the law supports what was done?
A. That's right.
Q. I take it you consider that your office made a mistake?
A. Absolutely not, your honor.

7. The district court appeared to place on Doe the burden of proving harm to avoid dismissal of his claims as moot. "[P]laintiff has not shown ineradicable harm or any future harm from the subpoena, and the case, as it is now before the Court, meets the second step of the mootness test." Memorandum Opinion, *supra* note 2, at 5. The court thus suggested that because Doe did not tender sufficient evidence of harm there were no "effects of the alleged violation" to eradicate, and *Davis'* requirement

explicit claim for damages, the district judge may have thought the declaratory relief Doe requested was "equitable," adjunct to the request for injunctive relief, and therefore aimed only at future conduct. But a declaratory judgment request may anticipate or substitute for either "legal" or "equitable" relief; here, a declaration of Doe's rights could be the forerunner to a damage claim.[8] Defendant-appellees concede that if Doe had sought damages his action would not have been moot, "the legality of appellees' conduct would then have been a proper subject of inquiry." Brief for Appellees at 15. This concession is telling. Doe's request for declaratory relief, read with the liberality accorded initial, yet unanswered pleading statements, *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), may be deemed to imply a request for damages, if they are appropriate, in conjunction with or at the foot of the declaratory judgment.[9]

## III. CONCLUSION

The judgment dismissing Doe's complaint as moot is reversed, and the case is remanded for further proceedings consistent with this opinion. Though some of the defendants have supplied some of the relief Doe originally sought,[10] the case retains vitality. Law enforcement officials might again subpoena Doe's files; VA officials might again release the files on official request without notice to Doe. Doe is entitled to consideration of the merits of his demand for a declaration of his rights and for further

of complete and irrevocable eradication was automatically satisfied. We do not agree with this analysis. In applying the second prong of *Davis* a court should *assume* that the alleged wrong was committed and that the alleged harm occurred, and ask only whether intervening events completely dispel the harm that plaintiff alleges. Appellees' counsel conceded this several times at oral argument: "I think this court must assume the truth of the allegations in the complaint and ignore the questions on the merits, and inquire into the mootness question, which is whether or not this is going to happen again." *Cf. Spomer v. Littleton,* 414 U.S. 514, 522 n. 10, 94 S.Ct. 685, 689 n. 10, 38 L.Ed.2d 694 (1974) ("to determine whether respondents have a live controversy . . . we must look to the charges *they* press" (emphasis in original)); *Network Project v. Corporation for Pub. Broadcasting,* 183 U.S.App.D.C. 70, 561 F.2d 963, 967–68 & n. 25 (1977) ("mootness must be determined solely by reference to the allegations of the complaining party"), *cert. denied,* 434 U.S. 1068, 98 S.Ct. 1247, 55 L.Ed.2d 770 (1977).

**8.** *See* 28 U.S.C. §§ 2201, 2202 and Fed.R.Civ.P. 57. *Doe's complaint requested, in addition to* declaratory and injunctive relief, "such other and further relief as may be just and proper," relief that Rule 54(c)'s second sentence would permit in any event. *Cf. Gull Airborne Instruments, Inc. v. Weinberger,* 694 F.2d 838, 846 n. 10 (D.C.Cir.1982) (even if claim for injunctive relief is moot, case is not moot if plaintiff retains a claim for damages); *Sills v. Kline Paper Stock Co.,* 238 F.Supp. 833 (D.D.C.1965); *City of Leominster v. Pittsburgh-Des Moines*

*Steel Co.,* 201 F.Supp. 66 (D.Mass.1962); E. Borchard, Declaratory Judgments §§ 432–33, 440, 557 (2d ed. 1941); 2 W. Anderson, Declaratory Judgments § 451 at 1058–60 (2d ed. 1951).

At oral argument both sides appeared to share a supposition that when Doe's complaint was filed it was too early for him to seek damages. Counsel may have had in mind 28 U.S.C. § 2675(a), which requires a plaintiff who claims damages against the United States under the Federal Tort Claims Act, to present the claim first to the appropriate agency. The agency has six months to act on the claim. Here however, individual officers, not the United States, are the targets of Doe's suit.

**9.** Doe's case is readily distinguishable from *Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Comm'n,* 680 F.2d 810 (D.C.Cir.1982). In that case NRDC challenged the NRC's promulgation of a rule without notice and comment. Before the appeal was heard the NRC repromulgated the rule, adopting standard notice and comment procedures. No recurrence of the alleged violation was likely; there was no threat that the challenged procedure, omitting notice and comment, would be used again in a similar context. And the original harm had been completely eradicated—the agency had already done all that a court might otherwise have ordered it to do.

**10.** Doe's complaint remains unanswered. On remand Doe may amend the complaint to confine it to relief he now seeks. *See* Fed.R.Civ.P. 15(a).

relief necessary or proper to redress the injuries he asserts.[11]

*Reversed and remanded.*

---

11. We intimate no opinion on the ultimate merits of Doe's claims; we hold only that his ac- tion remains vital and should not have been dismissed as moot.