**NATIONAL WILDLIFE FEDERATION, et al., Plaintiffs,**

v.

**DEPARTMENT OF INTERIOR, et al., Defendants.**

Civ. A. No. 83–3586.

United States District Court, District of Columbia.

Oct. 23, 1984.

John E. Bonine, Michael D. Axline, Eugene, Or., Thomas France, Missoula, Mont., for plaintiffs.

David Burwell, Washington, D.C., Barbara Gordon, Catherine J. Lanctot, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This case is now before the Court on cross-motions for summary judgment and defendants' motion to dismiss. Plaintiffs National Wildlife Federation (NWF) and Northern Plains Resource Council (NPRC) filed this suit in December of 1983 to recover search and duplication fees after their request for a fee waiver under the Freedom of Information Act (FOIA) was denied by the Department of Interior. In their complaint, the plaintiffs sought injunctive relief requiring the defendants to refund fees that had been paid, and declaratory relief clarifying the meaning of the FOIA fee waiver provision (5 U.S.C. § 552(a)(4)(A)). Shortly after the suit was filed, the defendants refunded the full amount of the costs that had been assessed against the plaintiffs and moved to dismiss on the ground that the case had become moot. In the alternative, the defendants argued that the agency guidelines used to deny the fee waiver were consistent with FOIA and that, therefore, summary judgment should be granted in their favor. The plaintiffs disagreed, insisting that a "continuing controversy" existed before the Court and that summary judgment awarding the declaratory relief sought should be granted.

Because no material facts remain in dispute, the parties' respective motions are now ready for adjudication. Two issues rest before the Court: have the plaintiffs satisfied the "case or controversy" requirement of Article III and, if so, are the guidelines and regulations used by the defendants to deny the fee waiver supported by FOIA.

### I.

On March 11, 1983, the National Wildlife Federation filed a FOIA request with the Montana State Director of the Bureau of Land Management (BLM). The purpose of the request was to obtain information about "the wildlife impacts associated with The Fort Union Local Lease Sale and Meridian Coal Exchange." NWF hoped to "garner a full understanding of the nature and extent of the proposed lease sale and exchange, and its effect on wildlife." NWF intended to share any information it received with the Northern Plains Resource Council.

5 U.S.C. § 552(a)(4)(A) empowers government agencies to charge FOIA requesters a fee to cover the cost of locating specific records and duplicating documents:

> In order to carry out the provisons of this section, each agency shall promulgate regulations, pursuant to notice and receipt of public comment, specifying a uniform schedule of fees applicable to all constituent units of such agency. Such fees shall be limited to reasonable standard charges for document search and duplication and provide for recovery of only the direct costs of such search and duplication.

The section also provides that fees may be waived or reduced if the information requested "can be considered as primarily benefiting the general public":

> Documents shall be furnished without charge or at a reduced charge where the agency determines that waiver or reduc-

tion of the fee is in the public interest because furnishing the information can be considered as primarily benefiting the general public.

5 U.S.C. § 552(a)(4)(A). Because NWF and NPRC are both non-profit organizations dedicated to the promotion of conservation principles on behalf of large national and statewide constituencies respectively, NWF requested a fee waiver for the search and duplication costs under this "public interest" clause. The request was summarily denied by the BLM. In order to expedite review of the documents, the plaintiffs proceeded to pay for the costs of the search and copying, but after the documents were received an appeal of the waiver decision was promptly made to the Department of Interior (DOI).

Before the appeal was actually filed, the plaintiffs wrote to the BLM to request an explanation of the denial and a refund of the $113.30 that had been paid. BLM responded only by stating that the request had failed to meet Department of Justice (DOJ) guidelines for granting fee waivers. Those guidelines[1] require an agency to evaluate five factors before ruling on a fee waiver request:

(1) whether there is a genuine public interest in the subject matter of the documents for which a fee waiver is sought;

(2) whether the disclosable contents of the records are informative on an issue of public interest;

(3) whether the requested information is already available in the public domain;

(4) the level of expertise possessed by the requester in the subject area of the request, and the strength of the requester's intention to disseminate the information to the public;

(5) the existence of any personal interest on the part of the requester in the disclosure.

DOI and BLM regulations state that the agency handling the FOIA request retains discretion to determine whether the request is in the public interest, *see* 43 C.F.R. 2.19(c)(1) (1984); Manual of the Bureau of Land Management § 1372.3(B)(3), but only these DOJ guidelines set out with any degree of specificity the approach an agency should take in attempting to define the meaning of "public interest".

On appeal, DOI upheld BLM's ruling. Like BLM, DOI concluded that the plaintiffs had not satisfied the DOJ guidelines. Specifically, DOI noted that the plaintiff had failed to establish that the disclosure would serve a "general public interest", or provide information "on any plan or program for disseminaton of the material."

Seven months after the DOI's decision, the plaintiffs filed this suit. In their prayer for relief, the plaintiffs asked this Court to: (1) declare that the denial violates 5 U.S.C. § 552(a)(4)(A) and order a refund of the fee; (2) declare that the guidelines set forth in the DOJ memorandum of January 7, 1983 violate 5 U.S.C. § 552(a)(4)(A); (3) declare that BLM Manual Section 1372.-3(B)(3) is "not in accordance" with federal law; (4) declare that 43 C.F.R. § 2.19(c)(1) is invalid; (5) declare that the requester will be presumptively entitled to a fee waiver if the request has been made by "a registered non-profit organization seeking information pertaining to that organization's area of expertise, for the purpose of affecting government policy or educating the public"; and (6) award the plaintiffs costs and reasonable attorneys fees pursuant to 5 U.S.C. § 552(a)(4)(E).

Two months after the complaint was filed DOI reconsidered its ruling and decided to grant the fee waiver. By letter dated February 9, 1984, DOI instructed BLM to refund the plaintiffs the full amount of the search and duplication charges they had previously paid to obtain the documents. That amount has now been received by the plaintiffs.

---

1. The guidelines referred to by the BLM were set out in a January 7, 1983 memorandum from Jonathan C. Rose, Assistant Attorney General in the Office of Legal Policy, to the heads of all federal departments and agencies. The memorandum was sent by the BLM to the plaintiffs at the time the plaintiffs requested an explanation for the denial of a fee waiver.

## II.

■ The doctrines of "mootness" and "standing" are inextricably intertwined. As a general matter, federal court jurisdiction can only be invoked to decide questions of law that arise in a "case or controversy." Moot cases lie beyond the judicial power because the case or controversy ceases to exist once the matter has been resolved. *See* C. Wright, *Law of Federal Courts*, 38–39 (3d ed. 1976). Establishing federal jurisdiction, however, requires more than a showing that a "case or controversy" exists. The plaintiff must make out a "case or controversy" between *himself* and the defendant; that is, the plaintiff must allege "a distinct and palpable injury to himself" such as to "warrant *his* invocation of federal-court jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 498–501, 95 S.Ct. 2197, 2204–06, 45 L.Ed.2d 343 (1975). Clearly, once a case has become moot or otherwise been resolved, a plaintiff no longer possesses standing because he cannot claim to suffer from "some threatened or actual injury resulting from the putatively illegal action." *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205, *quoting Linda R.S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973).

■ In the present case plaintiff NWF has failed to demonstrate either that a controversy remains before this Court, or that it possesses the requisite standing to litigate its claims. At the time NWF filed its complaint the sole injury it had suffered as a direct result of the defendants' actions was the loss of the $113.30 fee paid to BLM for duplication and search costs. Once that money was refunded, NWF could no longer point to a "distinct and palpable" injury requiring redress. In effect, the refund relegated NWF's position to that of a *potential* plaintiff who, like any other member of the public, might voice concern over *future* harm that could be inflicted as a result of the DOJ's new FOIA guidelines, but who lacked the standing needed to have a federal court decide the merits of a particular and immediate dispute.

To the extent that the refund removed the plaintiffs' standing to sue, it also terminated the "case or controversy" at issue in this case. Had the defendants denied fee waivers to a number of plaintiffs, the loss of standing as to one party would not necessarily have made the entire controversy moot. But here the sole basis for the initial filing of the complaint was the denial of a single fee waiver to NWF. Once that money was returned, the dispute took on a "hypothetical character," C. Wright, *Law of Federal Courts* at 38, and the plaintiffs became indistinguishable from any other citizen or group that might wish to have a clarification of law from an Article III court—not for the purpose of redressing a particular harm—but for mere "convenience".

Without the ability to place a legal dispute in a factual context involving adverse parties, any decision issued by this Court would be purely advisory. The federal law of justiciability, as embodied in the doctrines of mootness and standing, has historically frowned on advisory opinions because of the need "to assure that the federal courts will not intrude into areas committed to the other branches of government." Wright, *Federal Courts* at 38. Indeed, the rule against advisory opinions has roots deep in Anglo-American jurisprudence. Secretary of State Jefferson first voiced the fear that advisory opinions would violate the doctrine of separation of powers contemplated by the Constitution in 1793. 3 *Correspondence and Public Papers of John Jay*, 488–89 (1890). Shortly thereafter, in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), Chief Justice Marshall wove the rule into his newly formed doctrine of judicial review by holding that the Supreme Court had the power to declare a statute unconstitutional only if the case was susceptible of judicial determination. Implicit in this ruling was the recognition that the power of the judiciary would best be preserved against encroachment if the judiciary itself did not overreach and was careful to avoid deciding cases not properly before it. Since that time the Supreme Court has, on numerous

occasions, "recognized the risk that comes from passing on abstract questions rather than limiting decision to concrete cases in which a question is precisely framed by a clash of genuine adversary argument exploring every aspect of the issue." Wright, *Federal Courts* at 41. *See Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *U.S. v. Fruehauf*, 365 U.S. 146, 81 S.Ct. 547, 5 L.Ed.2d 476 (1961).

This case involves precisely the same concerns that the mootness doctrine has historically been invoked to avoid. To grant additional relief to that already volunteered by the defendants in this case—without any showing of further specific harm—would require this Court "to decide questions of law in a vacuum." The harm alleged by the plaintiffs is purely speculative. It is a matter to be addressed by prophylactic legislation, not by litigation. However legitimate they may be, the plaintiffs' concerns, standing on their own, cannot be resolved by this Court without usurping the role of the legislative and executive branches.

Even were we to conclude that a live controversy did exist and that the plaintiffs possessed the necessary standing, this case would still not be ripe for adjudication. In *Webb. v. Dep't of Health and Human Services*, 696 F.2d 101 (D.C.Cir.1982), the D.C. Circuit held that a federal court lacked jurisdiction under the "ripeness doctrine" to review a regulation where voluntary action by the defendant had mooted the specific dispute between the parties. Plaintiff Webb had requested information under FOIA from the FDA about a new drug. Webb's request was denied. Webb then challenged the validity of the regulation that had been used as the basis for the denial. After Webb had filed suit against the government, the party in possession of the information agreed to release it voluntarily. Relying on the two-prong "ripeness

test" set out by the Supreme Court in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967),[2] the Court ruled that in the absence of a particularized FOIA request the validity of the challenged regulation was not ripe for judicial review.

■ The facts of this case are surprisingly similar to those in *Webb*. By their voluntary payment of the fee waiver the defendants have mooted the specific request that formed the basis of the plaintiffs' claim of injury. Thus, delaying review will certainly not create undue "hardship" for the plaintiff. *Abbott*, 387 U.S. at 149, 87 S.Ct. at 1515. More important, as in *Webb*, the generalized nature of the plaintiffs' challenge makes the issues placed before the Court unfit for decision:

Since 'judicial appraisal of [the issue] is likely to stand on a much surer footing in the context of a specific application of this regulation than could be the case in the framework of [a] generalized challenge' we conclude that the issue is not fit for judicial review.

*Webb*, 696 F.2d at 107, *quoting Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164, 87 S.Ct. 1520, 1523, 18 L.Ed.2d 697 (1967). *See Abbott*, 387 U.S. at 149, 87 S.Ct. at 1515 (second prong of ripeness test concerns fitness of issue for judicial decision).

NWF insists that the lack of a case or controversy should not preclude the Court from asserting jurisdiction because the issue is one that is "capable of repetition, yet evading review." *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973); *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Clearly, the injury initially suffered by the plaintiffs is capable of repetition. At any time in the future BLM or DOI could deny a request for a fee waiver.

■ There is nothing to suggest, however, that the issue is one that by its very

---

**2.** Under the *Abbott* test a court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withhold-

ing court consideration" in order to determine the ripeness of an issue. 387 U.S. at 149, 87 S.Ct. at 1515.

nature will evade review. In *Roe v. Wade,* the Supreme Court refused to apply the mootness doctrine because the condition or injury that had to be shown in order to file the suit—pregnancy—terminated as a matter of course before the case could reach a stage of finality. Similarly, in *Defenders of Wildlife v. Endangered Species, etc.,* 659 F.2d 168 (D.C.Cir.1981) a challenge to the Fish and Wildlife Service's regulations governing the export of bobcats was not held moot when the bobcat export season ended because "there was a reasonable expectation that the same complaining party would be subjected to the same action again", *and* "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration." *Defenders,* 659 F.2d at 175.[3] In the instant case the dispute has been mooted not by the occurrence of events outside the control of the plaintiffs or simply by the passage of time, but rather the controversy has been terminated because the defendants agreed to redress the full extent of the plaintiffs' injury. A matter does not "evade review" under *Roe* because the harm alleged has been abated. To the contrary, to invoke the doctrine the plaintiffs must be able to point to continuing concrete harm that has not been redressed. Here, no such harm exists.

The plaintiffs may in fact be correct in pointing out that the government decided to pay the refund in order to avoid further litigation and a ruling on the validity of the guidelines. Nevertheless, the DOI's reasons for granting the waiver are irrelevant to the question of justiciability. The decision of this Court would be the same whether DOI had reviewed the request against the guidelines and initially decided to grant the fee waiver, or whether the DOI waived the fee only as a matter of litigation strategy. In either case the sole question before the Court would be "whether the short-term nature of [the] action makes the issues presented here 'capable of repetition, yet evading review,' so that petitioners are adversely affected by government *'without a chance of redress.'*" *Super Tire Eng'g Co. v. McCorkle,* 416 U.S. 115, 123, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1, *quoting Southern Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911) (emphasis added). Here, the only concrete injury suffered by the plaintiffs has been entirely abated by the refund. Nothing in the declaratory relief that the plaintiffs still insist upon receiving will contribute to the redress of the specific harm suffered. *Cf. McCorkle,* 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974) (grant of injunctive relief did not moot case because declaratory relief still needed to redress specific injury that had been alleged).

---

**3.** The plaintiffs rely on three recent cases, *Montgomery Environmental Coalition v. Costle,* 646 F.2d 568 (D.C.Cir.1980); *Environmental Defense Fund v. Gorsuch,* 713 F.2d 802 (D.C.Cir.1983); *Doe v. Harris,* 696 F.2d 109 (D.C.Cir.1982), to argue that this case is "capable of repetition, yet evading review." All of these cases are distinguishable from the one at bar. In *Costle* and *Gorsuch* the D.C. Circuit held that the challenge to agency action was not moot, in part because the action was capable of repetition, but also in part because the action involved a challenge to the defendant agency's permit process—a process that the defendant in *Gorsuch* conceded was only temporary in duration and would, by its very nature, continually evade review. 696 F.2d at 810. As noted above, this case does not involve a challenge to action that by its very nature is too short ever to permit review. Nor does the present case involve a situation as in *Gorsuch* where relief, if voluntarily granted by

the defendant, will automatically lapse after a statutory period has elapsed. Unlike the permit suspension in *Gorsuch,* the refund here represents complete and final redress to the specific harm alleged.

In *Doe* the District Court had ruled that the challenged action was not capable of repetition based on assurances made in court by the defendants. On appeal, the D.C. Circuit found that these assurances constituted an inadequate foundation upon which to conclude that the action was incapable of repetition. The Court did not, however, alter in any form the requirement that the action also be too short in duration to permit final review. Rather, the Court limited its ruling to the "capable of repetition" prong of the test. There is no question, as noted above, that this action is capable of repetition. It is only the "evading review" part of the test that has not been met. *Doe,* therefore, is inapplicable.

Of course, to the extent that NWF has not received the advisory opinion on the validity of the guidelines that it persists in seeking, it has not received the "full redress" that it wants. But the "evading review" doctrine was not designed to insure that type of relief.

While the Court understands the concern over the prospect of having to resort to litigation at some point again in the future if a fee waiver should be denied, the plaintiffs have every reason to be gratified at the outcome of this litigation. The fee waiver that they sought has been granted. Accordingly, the litigation that they have undertaken has served its purpose well. If waivers are denied in the future, the plaintiffs will once again be able to turn to litigation to protect what they believe are their legal rights. It is the function of litigation to protect rights on a case by case basis in this manner.

Although the litigation that may be required in the future to win additional fee waivers may not be the most "efficient" means of insuring that rights are protected, "inefficiency" is not a reason to depart from the case by case approach to adjudication that lies at the heart of our legal system. Advisory opinions might, indeed, be more "efficient" in the long run, but that is not the course that our judicial forefathers chose to follow.

### III.

Having concluded that the threshold Article III justiciability requirements have not been met, the plaintiffs' claims on the merits need not be addressed.[4] Attorneys fees, however, are a different matter.

■ The FOIA provides that "[t]he Court may assess against the United States reasonable attorneys fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). Because the institution of this suit has resulted in the granting of a fee waiver to NWF, the plaintiffs have substantially prevailed on the central claim of the lawsuit. Accordingly, the plaintiffs are entitled to attorneys' fees for time spent preparing this litigation up until the point that the refund was granted.[5] The precise amount of the award shall be determined only after the Court has an opportunity to review prompt submissions of the plaintiffs addressing the specific elements of their requests. Those submissions must be filed within twenty-five days from this date; opposition, if any, shall be filed twenty-five days thereafter.

For the foregoing reasons the defendants' motion for dismissal is, this 23rd day of October, 1984, hereby granted. Accordingly, all outstanding motions, including the cross-motions for summary judgment, are hereby dismissed.

IT IS SO ORDERED.

---

**4.** The Court's ruling on the Article III question also obviates the need for a ruling on the plaintiffs' motion to Supplement the Record which was filed after the cross-motions for summary judgment.

**5.** Attorneys' fees are proper in this instance even though the fee refund had the effect of mooting the plaintiffs' case. *See Nationwide Bldg. Maintenance, Inc. v. Sampson,* 559 F.2d 704 (D.C.Cir. 1977).