### SDS BIOTECH CORPORATION, Plaintiff,

v.

### ENVIRONMENTAL PROTECTION AGENCY, et al., Defendants.

Civ. A. No. 84–0719.

United States District Court, District of Columbia.

June 27, 1985.

---

**320**

Harold Himmelman, Cynthia A. Lewis, Robert Brager, Beveridge & Diamond, Washington, D.C., for plaintiff SDS Biotech Corp.; R. Craig Andrews, SDS Biotech Corp., Painesville, Ohio, of counsel.

Julie A. Weisman, Environmental Defense Section, Land & Natural Resources Div., U.S. Dept. of Justice, William L. Jordan, Marcia E. Mulkey, Pesticides and Toxic Substances Div., Office of Gen. Counsel, U.S. E.P.A., Washington, D.C., for Federal defendants.

David B. Weinberg, Jacqueline E. Zins, Susan D. Sawtelle, Wald, Harkrader & Ross, Washington, D.C., for defendant Griffin Corp.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

At issue in this case are the pesticide registration requirements of the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. §§ 136–136y (1980). Plaintiff, SDS Biotech Corporation, holds a number of pesticide registrations for chlorothalonil products. Defendant, Griffin Corporation, holds two conditional chlorothalonil registrations. The Environmental Protection Agency (EPA), also a defendant, is responsible for administering the registration program.

The history of this case is somewhat complicated. SDS Biotech obtained the first registrations for chlorothalonil in 1966. In 1972, Congress amended FIFRA establishing a new standard for review of pesticide registrations and requiring EPA to reregister pesticides under the new standards. 7 U.S.C. § 136a(g). During the reregistration process, EPA was not required to cancel existing registrations, even though those registrations had been issued utilizing fewer data than the amended Act would require for a new registration. This resulted in an anomolous situation whereby new applicants were denied registrations to market pesticides identical to products already on the market because they could not meet the Act's more stringent data requirements. To remedy this anticompetitive effect, Congress amended FIFRA again in 1978 and created the conditional registration program whereby new applicants who wished to market products substantially similar to products already on the market were given conditional registrations. They were permitted to market pesticides even though certain data was missing "under such conditions as will require the submission of such data not later than the time such data are required to be submitted with respect to similar pesticides already registered under this [Act]." 7 U.S.C. § 136a(c)(7)(A).

In this case, EPA determined that additional data was required on the teratological risk related to chlorothalonil and it issued a data call-in notice on September 14, 1981. This notice required registrants of pesticide products containing chlorothalonil to provide teratogenicity studies 26 months after receipt of the notice.[1] EPA did not

---

1. The notice also required a recipient to inform the EPA within 90 days if it were subject to the terms of the notice and how the recipient planned to comply with the notice. One method of compliance was to make an irrevocable offer to compensate another entity which planned to submit data. Section V–E of September 14, 1981 Data Call-In Notice.

send a notice of the data call-in to Griffin Corporation because in September 1981, Griffin was not a registrant. On November 19, 1981, and on January 1, 1983, EPA issued conditional registrations to Griffin for end-use and technical chlorothalonil products. Again, no mention was made by EPA that a data call-in notice had been issued and that Griffin was required to submit data at the same time that other registrants were required to submit data.

In April 1983, a portion of FIFRA relevant to these proceedings was declared unconstitutional by a District Court and its enforcement enjoined.[2] Section 136a(c)(1)(D), the operation of which was enjoined by the District Court, established a system under which data supplied by one applicant could be used to support other applications, provided that an offer to compensate the original data supplier was made. This procedure was intended to reduce duplicative research and encourage cooperative ventures. It also provides a relatively simple procedure by which new applicants could receive a registration— they could cite data previously generated, offer to pay, and be credited with submission of that data. A compulsory arbitration system is also in place to deal with disputes over the amount of compensation.

On July 7, 1983, SDS submitted its information on teratology and on the basis of its compliance with the data call-in, its registration was continued in force. Griffin states that it first discovered the data call-in requirement in November 1983 and thereby found that it was in a situation where it was unable to generate the data by the deadline and was enjoined from using the normal statutory citation/offer to pay procedure. Griffin did make an offer to pay SDS for the citation of its data on December 12, 1983.

EPA did not take action to cancel Griffin's registration, stating that it was deferring any decision on whether Griffin had failed to comply with its conditions of registration until after the *Monsanto* and *Union Carbide* litigation was resolved. On March 8, 1984, SDS filed this action to compel EPA to cancel Griffin's registration and on June 8, 1984, this Court issued a stay of proceedings in this case pending the outcome of the *Monsanto* case.

The injunctions in the *Monsanto* and *Union Carbide* cases were finally resolved on October 9, 1984.[3] EPA thereupon took steps to reinstitute the FIFRA procedures permitting citation to earlier submitted data. In December 1984, Griffin filed an application to amend its chlorothalonil registration, cited the SDS data on teratology, as well as other data in EPA files and offered to pay SDS compensation for the use of its data. On February 8, 1985, EPA issued the amended registrations to Griffin.

Presently before the Court are cross-motions for summary judgment and EPA's motion to dismiss as moot. Oral argument

---

**2.** The District Court for the Eastern District of Missouri enjoined the FIFRA procedure permitting applicants to rely upon data generated and submitted by other applicants if an irrevocable offer to compensate the original data submitter was made. The court found that this procedure constituted an unconstitutional taking. *Monsanto Co. v. Acting Administrator, EPA*, 564 F.Supp. 552 (E.D.Mo.1983). In a similar case before the Southern District of New York, the court found that the requirement of FIFRA that applicants submit to binding arbitration violated the Constitution by restricting access to judicial review. *Union Carbide Agricultural Products Co. v. Ruckleshaus*, 571 F.Supp. 117 (S.D.N.Y.1983).

These injunctions remained in effect until July 26, 1984, when the Supreme Court upheld the constitutionality of FIFRA in the *Monsanto*

case, vacated that injunction, and remanded the case. *Ruckelshaus v. Monsanto*, —— U.S. ——, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984). The Supreme Court remanded the *Union Carbide* case for further proceedings, the *Union Carbide* court reinstated the injunction and that case was again appealed to the Supreme Court. In October 1984, the Supreme Court stayed the injunction in *Union Carbide* pending appeal of the matter. *Ruckelshaus v. Union Carbide*, —— U.S. ——, 104 S.Ct. 3566, 82 L.Ed.2d 866 (1984), judgment reinstated on remand, 79 Civ. 2913 (RO), injunction stayed pending appeal, —— U.S. ——, 105 S.Ct. 237, 83 L.Ed.2d 177 (1984).

**3.** This was the date when the Supreme Court stayed the second *Union Carbide* injunction. See note 2, *supra*.

was held on May 17, 1985, and this case is now ripe for decision.

The Court is of the view that this case is moot and must therefore be dismissed as there is no continuing case or controversy. The test for mootness was set out by the Supreme Court in *County of Los Angeles v. Davis*, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). See also, *Doe v. Harris*, 696 F.2d 109 (D.C.Cir.1982). A case is moot if the court concludes with assurance that there is no reasonable expectation that the alleged violation will recur and if interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.

The alleged violation in this case was Griffin's failure to submit or cite teratology data at the time such data was due under the data call-in. Under the statute, the remedy for this violation would be for Griffin to submit or cite such data by the due date or for EPA to cancel the Griffin registration. If Griffin cited data submitted by SDS, that company would also have the right under the statute to an irrevocable offer to pay compensation.

At the time the data was due, one of the statutory remedies had been declared unconstitutional and cancellation was the only available remedy. EPA therefore deferred action until the injunctions were vacated and then permitted Griffin to amend its registration, cite SDS teratology data and make an irrevocable offer to pay.

Analyzed under the *Davis* test, it is clear that there is no reasonable expectation that the alleged violation will recur. The situation was a highly unusual one in which a portion of the statute was declared unconstitutional and enjoined while the remainder of the statute remained in effect. Of the two procedures envisaged by Congress, only one, cancellation, remained as a viable option. EPA accordingly decided to defer any action until the conclusion of the *Monsanto* case and at that point permitted Griffin to amend. Such an unusual situation is unlikely to recur.[4]

As to the second factor, it is clear that interim events have eradicated the effects of the alleged violation. In order to amend its registration, Griffin had to cite all relevant data, including the teratology studies in question. The standard of review for amended applications is the same standard which would apply to any new application for a conditional registration for chlorothalonil products. 7 U.S.C. § 136a(c)(7)(A). The agency's interpretation that this section of the statute requires the same level of scrutiny for amended as for conditional registrations is reasonable and should not be disturbed unless there is some compelling reason that this interpretation is wrong. *Lead Industries Ass'n, Inc. v. EPA*, 647 F.2d 1130 (D.C.Cir.1980). Plaintiff has presented no compelling reason for disturbing the EPA interpretation of the statute. An EPA policy of giving the same scrutiny to amended applications and requiring citation of all necessary data is more protective of the environment and thus more in line with the purposes of the Act than the interpretation espoused by SDS Biotech.

Furthermore, Griffin did provide SDS with an irrevocable offer to pay for the citation of data in the amended application. Since EPA has stated that a review of an amended application requires citation of the relevant teratology data, and since Griffin has given an irrevocable offer to pay compensation for the use of the data required for amendment, SDS has received all of the relief it is entitled to under the Act.

---

4. At oral argument plaintiff argued that the EPA had recently issued a notice of rulemaking under which registrants could fail to comply with their registration requirements without facing cancellation proceedings as EPA would permit late amendments as a regular matter. This opinion expresses no view of the legitimacy of such a rulemaking or of an EPA procedure which would permit late amendments as a matter of course. The facts of this case make it clear that EPA was faced with an extraordinary situation which is unlikely to recur. This case also does not decide whether an applicant, like Griffin, can be excused from a data call-in requirement because it did not receive actual notice.

SDS argues that EPA was under an obligation to cancel the registration in December 1983, and the only remedy which will make the plaintiff "whole" again would be for the Court to order EPA to cancel the registrations now. The doctrine of mootness does not enable a Court to rewrite the past. It does require that a court consider whether interim events have so changed the nature of the controversy, that there is no longer a live dispute. In this case, where Griffin has amended its registration, cited all the data required for amended applications, and given the plaintiff an irrevocable offer to pay compensation, plaintiff has received all the relief which it is entitled to under the Act and EPA is not now required to cancel the registration.

Accordingly, this case will be dismissed with prejudice on the ground that the Court lacks jurisdiction because of mootness.