# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued April 20, 2006           Decided May 19, 2006

No. 05-7123

LAKEISHA LESESNE, AS PARENT OF B.F., OF MINOR,
APPELLANT

v.

DISTRICT OF COLUMBIA AND
ELFREDA MASSIE, INTERIM SUPERINTENDENT, DISTRICT OF
COLUMBIA PUBLIC SCHOOLS,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 04cv00620)

---

*Douglas W. Tyrka* argued the cause and filed the briefs for appellant.

*Mary T. Connelly*, Assistant Attorney General, Office of Attorney General for the District of Columbia, argued the cause for appellees. With her on the brief were *Robert J. Spagnoletti*, Attorney General, and *Edward E. Schwab*, Deputy Attorney General.

Before: GINSBURG, *Chief Judge*, and SENTELLE and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: Lakeisha Lesesne claims the District of Columbia Public Schools ("DCPS") violated the rights of her disabled son, "B.F.," under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1482 ("IDEA" or "the Act"). Alleging that DCPS failed to create an individualized education program ("IEP") for B.F., Lesesne filed a complaint in the United States District Court for the District of Columbia seeking injunctive and declaratory relief against DCPS. The District Court granted summary judgment in favor of DCPS, and Lesesne appealed. Because Lesesne has failed to demonstrate that B.F. was harmed by any statutory violations DCPS might have committed, we affirm.

I

B.F. is a mentally retarded and cannabis-dependent sixteen-year-old boy. During the fall of 2003, the Social Services Division of the Superior Court of the District of Columbia referred B.F. to DCPS for an "evaluation" to determine whether he was covered by IDEA. *See* 20 U.S.C. § 1414(a)(1) (requiring an initial evaluation to determine whether a child is covered by IDEA); 34 C.F.R. § 300.320 (prescribing procedures for an "initial evaluation"); D.C. Code § 38-2501(a) (2001) (requiring an "initial evaluation" within 60 days of a "referral"), *as amended by* D.C. L. 15-39 (eff. Nov. 13, 2003) (requiring an "initial evaluation" within 120 days of a "referral"). The Act guarantees "that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A); *see also* 34 C.F.R. § 300.7 (defining "child with a disability"). If a child's initial evaluation suggests he is entitled to a FAPE, IDEA then requires the school district to create and implement

an IEP, which is the "primary vehicle" for implementing the Act. *Honig v. Doe*, 484 U.S. 305, 311 (1988). The IEP is "[p]repared at meetings between a representative of the local school district, the child's teacher, the parents or guardians, and, whenever appropriate, the disabled child." *Id.* It "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Id.*; *see also* 34 C.F.R. § 300.343(b)(2) (requiring a "meeting to develop an IEP" within 30 days following the completion of a disabled student's initial evaluation).

B.F. was referred to DCPS for an initial "evaluation" on October 30, 2003. Over the following four months, DCPS attempted to test B.F.'s speech as part of his evaluation, but its efforts were repeatedly thwarted by B.F.'s truancy and Lesesne's refusals to facilitate the process. In early February 2004, Lesesne and B.F. finally reported for speech testing, but before B.F. could complete the test, a police officer arrested him for assaulting his girlfriend. At some point thereafter (the record is unclear as to exactly when), B.F. finally completed his speech test and his "evaluation."

Given the practical difficulties associated with conducting B.F.'s evaluation, DCPS decided to begin planning his IEP meeting, *see* 34 C.F.R. § 300.343(b)(2), even before B.F. had completed his testing (and thus even before DCPS was sure that he was covered by IDEA). On February 10, 2004—while DCPS was struggling to complete B.F.'s evaluation, and while DCPS was making preliminary plans for B.F.'s IEP meeting—Carolyn W. Houck (Lesesne's attorney at the time) contacted DCPS about the need for an IEP meeting. DCPS told Lesesne's attorney about B.F.'s pattern of uncooperative behavior, described the portions of his evaluation that remained

incomplete, and told her about DCPS's plans to convene an IEP meeting anyway.

Rather than facilitate DCPS's efforts to help B.F., Lesesne and her attorney instead focused their energies on litigation. On February 11, 2004—the day immediately following her first conversation with DCPS—Lesesne's attorney filed a request for a due process hearing with an independent hearing officer ("HO"), pursuant to 20 U.S.C. § 1415(b)(6), (f)(1). Alleging that DCPS had made no attempt to provide a FAPE for B.F., Lesesne demanded a hearing officer's decision ("HOD") requiring DCPS to perform all necessary evaluations of B.F., develop his IEP, determine an appropriate educational placement for him, and provide him with compensatory education.

On February 24, 2004—while Lesesne's request for a due process hearing was pending—DCPS faxed a "Letter of Invitation" to Lesesne's attorney, proposing three possible dates for an IEP meeting. Lesesne rejected all three dates by fax on February 26, 2004. That same day, DCPS responded by suggesting three more dates, which it hoped would be more convenient for Lesesne and her attorney. However, Lesesne and her new attorney (Douglas W. Tyrka) offered no response before the HO held an administrative hearing on March 5, 2004.

On March 19, 2004, the HO issued his final ruling, which dismissed the case and denied Lesesne's requests for relief. The HO found that the proceeding was moot because DCPS had made reasonable efforts to evaluate B.F. and to schedule an IEP meeting, but both Lesesne and her attorney had frustrated those efforts. The HO explained:

> My only complaint is that when it looks like a solution is in play I'm still sitting here despite the fact that you're here looking for an IEP meeting, an invitation has been sent and rather than calling . . . the school, apparently Ms. Houck wrote a letter and complained about the dates instead of picking up the phone and working out dates. So I've got to sit here and referee what seems not to be a very serious [denial of a] FAPE.

Accordingly, the HO denied Lesesne's requests for relief and dismissed her due process request with prejudice.

On April 1, 2004, DCPS again tried to contact Lesesne to schedule an IEP meeting. DCPS wrote: "[t]his is the (4th) attempt to meet with you and your Educational Advocate in regards to your son [*sic*] evaluations [*sic*] we are submitting another Letter of Invitation. This is the final Letter of Invitation. We will move forward with the meeting to insure his academic success." Instead of responding to DCPS's fourth and final invitation to convene an IEP meeting, on April 14, 2004, Lesesne filed a complaint in the District Court as a parent "aggrieved by" the HOD, 20 U.S.C. § 1415(i)(2). Reiterating her allegations that DCPS failed to provide B.F. with a FAPE, Lesesne's complaint sought various forms of injunctive and declaratory relief, including an IEP and an alternative educational placement for her son. After Lesesne filed her complaint in the District Court, she then filed two more due process requests with a second HO.

At some point amidst Lesesne's flurry of litigation activity, the parties reached an "agreement . . . on the record" that purported to resolve this case. Second HOD at 2. Unhelpfully, the parties failed to provide us with the text of their agreement. However, the record does reveal that the parties reached an agreement; pursuant to that agreement, B.F. was transferred to

an alternative educational placement; DCPS created and implemented an interim IEP, which the parties agreed to "review and revise . . . as necessary," *id.*; Lesesne's attorneys[1] sent two written acknowledgments to DCPS, confirming the fact that they had received and "reviewed" the IEP; and B.F.'s IEP was in place before the beginning of the 2004-2005 school year. The record contains no evidence that the parties ever revised B.F.'s IEP.

On July 26, 2005, the District Court entered summary judgment in favor of DCPS. After emphasizing that "B.F. is currently in a new educational placement following a second due process hearing," and after noting that "the record provides no indication that either the placement is inappropriate, or that an IEP has not been created," the District Court held the case moot. The court further held that even if the case was not moot, violations of IDEA's procedural requirements are actionable only if they affect a student's substantive rights. Because Lesesne failed to show that B.F. had been harmed by any procedural violations DCPS might have committed, the District Court granted summary judgment in favor of DCPS. Lesesne filed a timely notice of appeal. Our review is *de novo. See, e.g., Goldring v. District of Columbia*, 416 F.3d 70, 73 (D.C. Cir. 2005).

---

[1]As of the end of April 2004—when Lesesne's attorneys acknowledged receiving and "review[ing]" B.F.'s IEP—the record suggests that Lesesne was represented by both Mr. Tyrka and Ms. Houck: The former represented her at the administrative hearing on March 5, 2004 and continued to represent her before both the District Court and our court, while the latter demanded the administrative hearing in February 2004 and signed two letters acknowledging receipt of the IEP on April 21 and April 27, 2004.

7

II

Lesesne's appeal presents two issues. First, she argues that this case is not moot. Second, Lesesne argues that the District Court inappropriately exercised "hypothetical jurisdiction" over the merits of her claim. While we agree with Lesesne's first argument, we reject the second. Because the District Court erred in concluding this case is moot, both it and we have jurisdiction to review Lesesne's claim on the merits. And because we agree with the District Court's merits holding, we affirm.

A

Lesesne argues that this case is not moot because "effectual relief [i]s possible." Pet. Br. at 15. Specifically, Lesesne points out that her complaint includes requests for an IEP, "a declaratory judgment that DCPS denied B.F. FAPE," and "any other relief the Court deems just." Claiming that DCPS has never complied with any of her prayers for relief, Lesesne offers two arguments against mootness. While we conclude that both are without merit, we nonetheless agree that this case is not moot.

Lesesne's first argument is unavailing. In her briefs, Lesesne makes repeated assertions that this case is not moot because DCPS never created an IEP for B.F. *See* Pet. Br. at 8, 12 (two assertions), 13, 15, 16 (five assertions), 17, 24; Reply Br. at 1, 2 (four assertions), 3. Then at oral argument, Lesesne's attorney made repeated assertions that DCPS failed to create an IEP for B.F. (We have reproduced the relevant portions of the transcript in the Appendix attached hereto.) Five days after oral argument, however, DCPS submitted evidence documenting the fact that an IEP *was* developed on April 16, 2004. Moreover, in two separate letters to DCPS (dated April 21 and April 27,

2004), Lesesne and her attorney acknowledged having received and "reviewed" the IEP, although they declined to accept it. Notwithstanding the existence of the IEP and their documented knowledge of it, Lesesne's counsel steadfastly insisted—before the District Court and this Court—that an IEP had *not* been created. Regardless of whether Lesesne's assertions are amnesic oversights or unseemly pettifogging, there is no doubt that DCPS did develop an IEP. Accordingly, Lesesne's demand for an IEP is moot.

Lesesne's second argument against mootness is that her request for a declaratory judgment, combined with her boilerplate request for "any other relief the Court deems just," entitles B.F. to receive "compensatory education." *See* Pet. Br. at 12; Reply Br. at 3-4; *see also Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005) ("When a school district deprives a disabled child of [FAPE] in violation of [IDEA], a court fashioning 'appropriate' relief [under 20 U.S.C. § 1415(i)(2)(C)(iii)], may order compensatory education, i.e., replacement of educational services the child should have received in the first place."). In Lesesne's view, this implied request for "compensatory education" is sufficient to forestall mootness. While we reject Lesesne's rationale, we agree that this case is not moot.

Although Lesesne's own attorney fails to notice it, the very first paragraph on the very first page of her complaint contains an *explicit* demand for compensatory education. Because it does not appear that the parties' "agreement . . . on the record" addresses Lesesne's demand for compensatory education, her complaint presented the District Court with a live controversy. *Compare DeFunis v. Odegaard*, 416 U.S. 312, 316-17 (1974) (per curiam). Accordingly, we proceed to consider the merits of the District Court's decision to enter summary judgment for DCPS.

B

Lesesne argues that this case must be reversed and remanded to the extent it is not moot because the District Court's treatment of the merits constituted an unlawful assumption of "hypothetical jurisdiction." *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) ("Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning."). In Lesesne's view, the District Court's mootness holding rendered its alternative holding on the merits an unconstitutional advisory opinion. We disagree.

Because this case is not moot, both the District Court and this Court have jurisdiction to reach the merits. *See Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1031 (D.C. Cir. 2003) ("Although the district court would have been without jurisdiction to consider the merits had [the plaintiff] truly lacked standing, because we have concluded that [the plaintiff] does have standing, we now proceed to consider the court's decision to grant summary judgment." (citing *Steel Co.*, 523 U.S. at 93-94)); *see also Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248 (10th Cir. 2004) (reviewing district court's alternative holdings on mootness and the merits and affirming only the latter); *Verhoeven v. Brunswick Sch. Comm.*, 207 F.3d 1, 7 (1st Cir. 1999) ("[I]t appears that the district court reached the merits of the [appellants' claim], despite its mootness conclusion. Therefore, we treat the district court's decision on the merits as an alternative ground for the denial and review it accordingly."); *id.* at 7-11 (rejecting the district court's conclusion that the case was moot but affirming the district court on the merits). Given that the District Court did, in fact, have jurisdiction, it did not err in reaching the merits of this case.

Upon *de novo* review, we conclude that Lesesne's claims fall short on the merits. In a lone footnote on the last page of her opening brief, Lesesne argues that "B.F. was *per se* harmed" by DCPS's alleged failure to meet some of IDEA's procedural deadlines. Pet. Br. at 26 n.6. We disagree. Even assuming Lesesne has not waived her argument on the merits, *see Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 93 n.3 (D.C. Cir. 2002), and even assuming that DCPS violated its procedural obligations,[2] an IDEA claim is viable only if those procedural violations affected the student's *substantive* rights. *See*, *e.g.*, *Kruvant v. District of Columbia*, 99 Fed. Appx. 232, 233 (D.C. Cir. 2004) (denying relief under IDEA because "although DCPS admits that it failed to satisfy its responsibility to assess [the student] for IDEA eligibility within 120 days of her parents' request, the [parents] have not shown that any harm resulted from that error"); *C.M. v. Bd. of Educ.*, 128 Fed. Appx. 876, 881 (3d Cir. 2005) (per curiam) ("[O]nly those procedural violations of the IDEA which result in loss of educational opportunity or seriously deprive parents of their participation rights are actionable."); *M.M. ex rel. D.M. v. Sch. Dist.*, 303 F.3d 523, 533-34 (4th Cir. 2002) ("If a disabled child received (or was offered) a FAPE in spite of a technical violation of the

---

[2]We hasten to add that we do not think DCPS violated any of its procedural obligations. Lesesne's only argument to the contrary (Pet. Br. at 4) rests on the version of the District of Columbia's special education law that was in effect on October 30, 2003, when B.F. was first "referred" to DCPS for an "evaluation." *See* D.C. Code § 38-2501(a) (2001) (requiring an "evaluation" within 60 days of a "referral"). On November 13, 2003—before the 60-day period expired and thus before B.F. was entitled to an "evaluation"—an amendment to D.C. Code § 38-2501(a) became effective and extended the "evaluation" deadline. *See* D.C. L. 15-39 (requiring an "evaluation" within 120 days of a "referral"). The record does not suggest that DCPS failed to complete B.F.'s "evaluation" before the new deadline, February 27, 2004.

IDEA, the school district has fulfilled its statutory obligations."); *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 994 (1st Cir. 1990) (en banc) ("[P]rocedural flaws do not automatically render an IEP legally defective. Before an IEP is set aside, there must be some rational basis to believe that procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of education benefits." (citations omitted)); *W.G. v. Bd. of Trustees*, 960 F.2d 1479, 1484 (9th Cir. 1992) (rejecting the proposition that procedural flaws "automatically require a finding of a denial of a FAPE"); *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625 (6th Cir. 1990) (rejecting an IDEA claim for technical noncompliance with procedural requirements where the alleged violations did not result in a "substantive deprivation" of the student's rights); *Burke County Bd. of Educ. v. Denton*, 895 F.2d 973, 982 (4th Cir. 1990) (refusing to award compensatory education where procedural faults committed by Board did not cause the child to lose any educational opportunity).

Lesesne has made no effort to demonstrate—much less demonstrated—that B.F.'s education was affected by any procedural violations DCPS might have committed. *Cf. Reid*, 401 F.3d at 519-20 (chronicling substantive deprivations of a disabled student's rights). Accordingly, her claims fail on the merits.

III

For the reasons stated above, the judgment of the District Court is

*Affirmed.*

APPENDIX

\* \* \*

*Mr. Tyrka*: "The District Court did find that there was an IEP, and that was a major error on the District Court's part." (Tr. of Oral Argument at 2:42)

\* \* \*

*Mr. Tyrka*: "The District Court found that an IEP had been developed and that a placement had been made."
*The Court*: "They had, hadn't they?"
*Mr. Tyrka*: "Excuse me, your Honor?"
*The Court*: "That's correct, isn't it?"
*Mr. Tyrka*: "That's absolutely *incorrect*." (Tr. of Oral Argument at 3:18 (emphasis in original))

\* \* \*

*The Court*: "You're saying they didn't [create an IEP]?"
*Mr. Tyrka*: "They did not do that." (Tr. of Oral Argument at 6:05)

\* \* \*

*The Court*: "Was there never an IEP of any kind?"
*Mr. Tyrka*: "I know of no IEP." (Tr. of Oral Argument at 6:51)

\* \* \*

*Mr. Tyrka*: "Again, there has been no suggestion that there was any IEP developed." (Tr. of Oral Argument at 7:43)

\* \* \*

*Mr. Tyrka*: "What is alleged is they failed to develop an IEP in a timely fashion." (Tr. of Oral Argument at 14:22)

\* \* \*