# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————

Argued March 7, 2008          Decided April 29, 2008

No. 07-5196

CHARLES E. LARSEN, REVEREND, ET AL.,
APPELLANTS

v.

UNITED STATES NAVY AND
DONALD C. WINTER, SECRETARY OF THE UNITED STATES
NAVY,
APPELLEES

————

Appeal from the United States District Court
for the District of Columbia
(No. 02cv02005)

————

*Arthur A. Schulcz, Sr.* argued the cause and filed the briefs for appellants.

*Lewis Yelin*, Attorney, U.S. Department of Justice, argued the cause for appellees. On the brief were *Jeffrey S. Bucholtz*, Acting Assistant Attorney General, *Jeffrey A. Taylor*, U.S. Attorney, *Marleigh D. Dover*, Special Counsel, and *Catherine Y. Hancock*, Attorney.

Before: RANDOLPH and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the court filed by *Circuit Judge* TATEL.

Opinion concurring in part and concurring in the judgment filed by *Senior Circuit Judge* WILLIAMS.

TATEL, *Circuit Judge*: In this case, three applicants to the Navy Chaplain Corps allege that the Navy maintained a religious quota system for choosing chaplains and that under this system the Navy illegally refused to hire them because they are non-liturgical Protestants. But because the Navy has long since eliminated the challenged policy, plaintiffs' challenge is moot.

## I.

To become a Navy chaplain, a person applies to the Chaplain Accession and Recall Eligibility Board (CARE Board), which recommends to the Chief of Chaplains whether to hire the applicant. Plaintiffs Charles Larsen, Gregory McNear, and James Linzey applied to be Navy chaplains between 1987 and 2001, but the CARE Board recommended against hiring them and the Navy rejected all three. During that time, they allege, the Navy maintained quotas for how many chaplains it would hire from each of four "faith group categories." As we explained in *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006):

> The Navy divides its chaplains into four categories according to common faith group characteristics: Catholic, liturgical Protestant, non-liturgical Protestant, and "special worship." "Liturgical Protestant" refers to Protestant denominations that trace their

origins to the Reformation, retain an established liturgy in their worship services, and practice infant baptism; it includes Lutheran, Episcopal, Methodist, Presbyterian, and Congregational faiths. "Nonliturgical Protestant" refers to Protestant denominations that do not have a formal liturgy or order in their worship services, that baptize only those who have reached the age of reason, and whose clergy generally do not wear religious vestments during services; it includes Baptist, Evangelical, Pentecostal, and Charismatic faiths.

*Id.* at 294 (citations omitted). "'Special worship' refers to faith groups, both Christian and non-Christian, that have 'unique or special needs for their worship and religious practices'; it includes Jewish, Christian Science, Seventh-Day Adventist, Mormon, Buddhist, Hindu, Moslem, Jehovah's Witness, and Unitarian faiths." *Id.* at 295 n.3 (quoting *Adair v. England*, 183 F. Supp. 2d 31, 36 (D.D.C. 2002)).

Plaintiffs, all non-liturgical Protestants, allege that until 2001 the Navy had a policy of hiring one-third liturgical Protestants, one-third non-liturgical Protestants, and one-third divided between Catholics and adherents of "special worship" faiths (heavily weighted towards Catholics). According to plaintiffs, this "Thirds Policy," as they call it, discriminated against them because it underrepresented non-liturgical Protestants in the Chaplain Corps relative to their numbers in the Navy. The Navy admits that prior to 2001 it "maintained recruiting goals for each faith group category," Appellees' Br. 10, but asserts that since then it has given no consideration to any applicant's faith group in making hiring decisions.

Plaintiffs concede that the Navy "abandoned [its] Thirds Policy . . . in 2001." Appellants' Opening Br. 11.

In 2002, plaintiffs filed suit against the Navy in U.S. District Court for the District of Columbia, arguing that the Thirds Policy violated the First Amendment, Fifth Amendment, and Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb *et seq.* They sought declaratory and injunctive relief and an order declaring that if they were hired as Navy chaplains, they should receive "constructive credit" towards their pay and retirement benefits for the time they were improperly denied positions.

The district court construed plaintiffs' claim for "constructive credit" as a request for money damages and found it barred by sovereign immunity. *See Larsen v. Navy*, 346 F. Supp. 2d 122, 128-30 (D.D.C. 2004). It dismissed plaintiffs' RFRA claim on a questionable theory advocated by neither party, holding that RFRA had no application to the facially discriminatory policy alleged here because the statute applies only to government actions that are "neutral and generally applicable." *Id.* at 137. The district court later granted summary judgment for the Navy on plaintiffs' remaining claims, finding them largely moot but otherwise unpersuasive. *See Larsen v. Navy*, 486 F. Supp. 2d 11 (D.D.C. 2007). Plaintiffs now appeal, challenging the district court's RFRA, sovereign immunity, mootness, and First Amendment rulings.

## II.

We lack jurisdiction to evaluate the merits of the district court's substantive holdings because we find this entire case moot. "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v.*

*Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983).

This case is moot because in their complaint plaintiffs challenged only the legality of the Navy's alleged Thirds Policy, but even they admit that the Thirds Policy ended in 2001 and that the Navy now maintains no religious quotas. Plaintiffs nonetheless insist their claim remains live, but each of their three arguments fails.

First, as plaintiffs correctly point out, a defendant's voluntary cessation of a challenged practice moots a case only if the defendant shows that: (1) "'there is no reasonable expectation . . .' that the alleged violation will recur," and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Plaintiffs argue that the Navy flunked condition one because it failed to prove that it wouldn't reinstitute the Thirds Policy and condition two because it still uses the CARE Board. As to the first condition, because plaintiffs never allege that the Navy is likely to or even considering reinstituting the Thirds Policy, there is "'no reasonable expectation . . .' that the alleged violation will recur." *Id.* (quoting *Grant*, 345 U.S. at 633). Plaintiffs point out that the Navy still has authority to reinstitute the policy, but "the mere power to reenact a challenged [policy] is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists. Rather, there must be evidence indicating that the challenged [policy] likely will be reenacted." *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997). The record

here contains no such evidence. Plaintiffs insist that the Navy's continued defense of the now abandoned Thirds Policy amounts to evidence that the Navy will reenact the policy. In support, it cites our statement in *Doe v. Harris*, 696 F.2d 109 (D.C. Cir. 1982), that "when a complaint identifies official conduct as wrongful and the legality of that conduct is vigorously asserted by the officers in question, the complainant may justifiably project repetition." *Id.* at 113. But this case differs significantly from *Harris*. There, the defendant expressly said it would commit the same alleged violation again under certain circumstances, giving the plaintiffs solid "evidence indicating that the challenged [policy] likely [would] be reenacted." *Nat'l Black Police Ass'n*, 108 F.3d at 349. Here, by contrast, the Navy has never said it will reenact the Thirds Policy, and plaintiffs have not even alleged as much. As to condition two, the Navy's continued use of the CARE Board is irrelevant because the Board no longer applies any type of religious quota system.

Second, as plaintiffs again accurately point out, a case is not moot if a court can provide an effective remedy. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992). And according to plaintiffs, this court can provide a remedy, namely "a declaration that the Thirds Policy . . . was unconstitutional, their rejection unlawful, and that an injunction be granted preventing its reimplementation." Appellants' Opening Br. 37. But because the Navy already eliminated the Thirds Policy and plaintiffs never allege that the Navy will reinstitute it, any injunction or order declaring it illegal would accomplish nothing—amounting to exactly the type of advisory opinion Article III prohibits. Of course, if the district court's sovereign immunity holding was incorrect, plaintiffs' claim for "constructive credit" might defeat mootness, but because plaintiffs never argue this ground for avoiding mootness, we decline to consider it. *See Carducci v.*

*Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) ("[W]here counsel has made no attempt to address the issue, we will not remedy the defect . . . ."). Our concurring colleague is correct that in *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828 (D.C. Cir. 2006), we considered an argument against mootness that was only "implied" on appeal, but explicit in the complaint. *Id.* at 833. But here, plaintiffs never raised their constructive credit claim as a ground for avoiding mootness, not even implicitly. Moreover, the *Lesesne* court never said it *was required* to consider the argument the plaintiff inadequately raised. Thus, while *Lesesne* certainly means we *may* consider arguments a plaintiff fails to raise against mootness, we need not do so, especially where, as here, it might force us to resolve a constitutional question.

Even were we to deem this case a live controversy, there is another reason why we would decline to consider plaintiffs' claim for constructive credit. Because plaintiffs' claim relies on their first being hired as Navy chaplains—a vital condition that has yet to occur—it is unripe. *See Devia v. Nuclear Regulatory Comm'n*, 492 F.3d 421, 425 (D.C. Cir. 2007) ("[I]f a plaintiff's claim . . . depends on future events that may never come to pass, or that may not occur in the form forecasted, then the claim is unripe." (quoting *McInnis-Misenor v. Me. Med. Ctr.*, 319 F.3d 63, 72 (1st Cir. 2003))). The concurrence is concerned that delaying resolution of this claim may force these plaintiffs to a difficult decision about whether to reapply. By reaching the merits, however, we would be deciding an issue that will not arise unless plaintiffs are hired as Navy chaplains—something that may never occur. The claim is thus unripe.

Finally, plaintiffs argue that they challenge the Navy's current hiring policy as well as its Thirds Policy. Plaintiffs' complaint, however, focuses on the Thirds Policy. Of the

four relevant counts, three challenge "the Navy's chaplain accession goals," yet the complaint itself states that the Navy already "abandoned its policy of providing goals for specific faith group clusters." Compl. 18, 21, 23. The final relevant count alleges that "[t]he Navy has established and maintained an unconstitutional religious quota system." *Id.* at 22. Even on appeal, plaintiffs devote only two paragraphs of their sixty-two-page opening brief to attacking the Navy's current hiring policies, providing virtually no reasoning or citations. Appellants' Opening Br. 50-51. We decline to revive this case by reading into plaintiffs' complaint an argument not adequately presented. *See Ala. Power Co. v. Gorsuch*, 672 F.2d 1, 7 (D.C. Cir. 1982) ("Courts have long declined to render decisions on important questions of far-reaching significance which have not been argued by the party who might benefit therefrom.").

## III.

For the reasons stated above, we remand this case to the district court with instructions to dismiss plaintiffs' claim as moot.

*So ordered.*

WILLIAMS, *Senior Circuit Judge*, concurring in part and concurring in the judgment:  While I otherwise join the majority opinion in full, I depart from it as to the plaintiffs' request for "constructive credit."  I believe that this request, unlike the other equitable remedies the plaintiffs seek, could save their challenge to the now-abandoned "Thirds Policy" (see Maj. Op. at 3) from mootness.  In the end, however, I concur in the court's finding a lack of jurisdiction over plaintiffs' challenge to that policy, as this remedy is itself barred by the government's valid jurisdictional assertion of sovereign immunity.

The plaintiffs accuse the Navy of having engaged in religious discrimination by refusing to hire them as chaplains. They declare that they are "able and ready" to apply for the chaplaincy again, and they seek an injunction ordering the Navy, should it hire them as chaplains in the future, to accord them "constructive credit" for the years they would have served but for its unlawful discrimination under the Thirds Policy.  This additional seniority would entitle the plaintiffs to a higher salary and would make them eligible to receive an officer's pension on retirement, a benefit they would otherwise lack because of the Navy's retirement rules and pension prerequisites.

No one disputes that the plaintiffs allege an injury in fact (the discriminatory refusal to hire).  If the court can remedy that injury, their claim is not moot, and per *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 832-33 (D.C. Cir. 2006), we may look past a plaintiff's losing arguments to determine mootness from the complaint itself.  In *Lesesne*, the plaintiff correctly identified a form of relief that would have forestalled mootness, but she failed to recognize that it had been properly requested in her complaint—instead contending unsuccessfully that it was implied in her demand for "any other relief the Court deems just."  *Id.* at 833.  Here, by contrast, the plaintiffs correctly note that their complaint requests constructive credit;

they merely fail to cite this request as a specific defense to mootness. As in *Lesesne*, however, the fact that plaintiffs' rebuttals to mootness are "without merit" does not prevent us from recognizing that "[their] complaint presented the District Court with a live controversy." *Id*. at 832-33. The face of the complaint reveals a live claim: the plaintiffs asked for constructive credit and have not received it. The plaintiffs' briefs pressed this remedy on appeal, and their failure to mention it as a defense to mootness hasn't prejudiced the Navy—which acknowledged at oral argument that if constructive credit were not barred by sovereign immunity, the availability of that remedy would cure the mootness problem.

I am uncertain whether some unripeness in the request for constructive credit sweeps it out of the picture, leaving the attack on the Thirds Policy moot. It is true that the sought-after injunction requiring an award of credit would have bite only if the plaintiffs should be appointed as chaplains, and that ripeness normally calls on us not to adjudicate claims that "depend[] on future events that may never come to pass." Maj. Op. at 7 (quoting *Devia v. Nuclear Regulatory Comm'n*, 492 F.3d 421, 425 (D.C. Cir. 2007)). But the events underlying the plaintiffs' *substantive claim*—i.e., their attack on the Thirds Policy—have already occurred: the Navy's refusal to hire them suffices for liability (assuming, as we must, that the plaintiffs would win on the merits), and this refusal has had "its effects felt in a concrete way." *Devia*, 492 F.3d at 424 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). Indeed, the plaintiffs' claims are partially overripe; the Navy's shelving of the Thirds Policy rendered direct judicial relief against it meaningless and to that extent mooted the claim. The only remaining question is whether a court must wait before addressing the substantive questions on which the surviving meaningful remedy (the constructive credit) depends. But ripeness is a property of claims, not of remedies. If the Thirds Policy were still alive and thus an injunction still useful against

it, a court reaching the merits would consider the constructive credit remedy as well. Perhaps the law of remedies would bar such relief as too speculative, but the court would address that as a *merits* issue rather than as a ripeness defense.

Further, to say that the plaintiffs' claims become ripe only once they are hired might put them in the sort of bind that *Abbott Labs.* considered an important argument for ripeness, see 387 U.S. at 152-54, as it would require them to give up their current jobs (and any associated pension guarantees) before they could establish their pension eligibility as chaplains. Resolving the claim now would enable them to choose in light of their legal rights.

Even if we viewed the plaintiffs' request for credit as their "claim" (which seems odd), the predicate event that may or may not "come to pass" is their appointment as chaplains. In assessing the likelihood of that event for ripeness purposes, we must assume *arguendo* the validity of their merits claim. Removal of the discriminatory policy, to be sure, by no means guarantees their appointment, but the plaintiffs offered some evidence that their prospects would have been good in a non-discriminatory system, including evidence that, at least at the time of the applications, the Navy was falling short of its chaplain recruitment goals. Again, of course, the potential hardship to the plaintiffs may tilt the balance toward immediate adjudication. *Devia*, 492 F.3d at 427.

Doubtful that ripeness is a bar, and noting that we may "choose among threshold grounds for denying audience to a case on the merits," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999), I believe we can more confidently rely on the government's sovereign immunity defense.

The plaintiffs argue that their request for constructive credit falls within the Administrative Procedure Act's waiver

of sovereign immunity for actions "seeking relief other than money damages." 5 U.S.C. § 702. We need not determine whether, under *Hubbard v. EPA*, 982 F.2d 531 (D.C. Cir. 1992), such credit is a form of money damages in a strict sense, for *Kidwell v. Dep't of the Army* and its progeny extend the government's immunity to equitable relief which "in essence" represents a monetary recovery. 56 F.3d 279, 284 (D.C. Cir. 1995). As a result, where the relief sought lacks "significant non-monetary value," *Tootle v. Sec'y of the Navy*, 446 F.3d 167, 175 (D.C. Cir. 2006), it will be treated as a form of money damages.

A variety of non-financial benefits have been described as "considerable" in prior cases: the upgrading of a less-than-honorable discharge in *Kidwell*, 56 F.3d at 286, early retirement for an ill service member in *Tootle*, 446 F.3d at 175, and numerous benefits accruing to retired personnel in *Smalls v. United States*, 471 F.3d 186, 190 (D.C. Cir. 2006). But here the plaintiffs give no indication of any non-financial consequences to the constructive credit they seek. Rather, they state that "[u]nder existing law, there may be no way to compensate Plaintiffs *financially* for the Navy's illegal denial of a commission," Pls.' Mem. P. & A. Supp. Pls.' Opp. Defs.' Mot. to Dismiss, Docket No. 9, at 16 (emphasis added), and that "[t]he relief requested focuses on overcoming the Plaintiffs' burden and disqualification *for a pension* caused by Defendants' illegal actions," Larsen Br. 60 (emphasis added).

Because the plaintiffs "bear[] the burden of proving that the government has unequivocally waived its immunity," *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003), and their allegations fail to identify *any* non-monetary benefits to their proposed remedy, I would hold that their request for constructive credit is barred by sovereign immunity.