Opinion for the court filed by Circuit Judge TATEL.
Opinion concurring in part and concurring in the judgment filed by Senior Circuit Judge WILLIAMS.
TATEL, Circuit Judge:
In this case, three applicants to the Navy Chaplain Corps allege that the Navy maintained a religious quota system for choosing chaplains and that under this system the Navy illegally refused to hire them because they are non-liturgical Protestants. But because the Navy has long since eliminated the challenged policy, plaintiffs’ challenge is moot.
I.
To become a Navy chaplain, a person applies to the Chaplain Accession and Recall Eligibility Board (CARE Board), which recommends to the Chief of Chaplains whether to hire the applicant. Plaintiffs Charles Larsen, Gregory McNear, and James Linzey applied to be Navy chaplains between 1987 and 2001, but the CARE Board recommended against hiring them and the Navy rejected all three. During that time, they allege, the Navy maintained quotas for how many chaplains it would hire from each of four “faith group categories.” As we explained in Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290 (D.C.Cir.2006):
The Navy divides its chaplains into four categories according to common faith group characteristics: Catholic, liturgical Protestant, non-liturgical Protestant, *3 and “special worship.” “Liturgical Protestant” refers to Protestant denominations that trace their origins to the Reformation, retain an established liturgy in their worship services, and practice infant baptism; it includes Lutheran, Episcopal, Methodist, Presbyterian, and Congregational faiths. “Nonliturgieal Protestant” refers to Protestant denominations that do not have a formal liturgy or order in their worship services, that baptize only those who have reached the age of reason, and whose clergy generally do not wear religious vestments during services; it includes Baptist, Evangelical, Pentecostal, and Charismatic faiths.
Id. at 294 (citations omitted). “ ‘Special worship’ refers to faith groups, both Christian and non-Christian, that have ‘unique or special needs for their worship and religious practices’; it includes Jewish, Christian Science, Seventh-Day Adventist, Mormon, Buddhist, Hindu, Moslem, Jehovah’s Witness, and Unitarian faiths.” Id. at 295 n. 3 (quoting Adair v. England, 183 F.Supp.2d 31, 36 (D.D.C.2002)).
Plaintiffs, all non-liturgical Protestants, allege that until 2001 the Navy had a policy of hiring one-third liturgical Protestants, one-third non-liturgical Protestants, and one-third divided between Catholics and adherents of “special worship” faiths (heavily weighted towards Catholics). According to plaintiffs, this “Thirds Policy,” as they call it, discriminated against them because it underrepresented non-liturgical Protestants in the Chaplain Corps relative to their numbers in the Navy. The Navy admits that prior to 2001 it “maintained recruiting goals for each faith group category,” Appellees’ Br. 10, but asserts that since then it has given no consideration to any applicant’s faith group in making hiring decisions. Plaintiffs concede that the Navy “abandoned [its] Thirds Policy ... in 2001.” Appellants’ Opening Br. 11.
In 2002, plaintiffs filed suit against the Navy in U.S. District Court for the District of Columbia, arguing that the Thirds Policy violated the First Amendment, Fifth Amendment, and Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb et seq. They sought declaratory and injunctive relief and an order declaring that if they were hired as Navy chaplains, they should receive “constructive credit” towards their pay and retirement benefits for the time they were improperly denied positions.
The district court construed plaintiffs’ claim for “constructive credit” as a request for money damages and found it barred by sovereign immunity. See Larsen v. Navy, 346 F.Supp.2d 122, 128-30 (D.D.C.2004). It dismissed plaintiffs’ RFRA claim on a questionable theory advocated by neither party, holding that RFRA had no application to the facially discriminatory policy alleged here because the statute applies only to government actions that are “neutral and generally applicable.” Id. at 137. The district court later granted summary judgment for the Navy on plaintiffs’ remaining claims, finding them largely moot but otherwise unpersuasive. See Larsen v. Navy, 486 F.Supp.2d 11 (D.D.C.2007). Plaintiffs now appeal, challenging the district court’s RFRA, sovereign immunity, mootness, and First Amendment rulings.
II.
We lack jurisdiction to evaluate the merits of the district court’s substantive holdings because we find this entire case moot. “Simply stated, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.” County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (quoting Powell v. McCormack, 395 U.S. 486, 496, *4 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)) (internal quotation marks omitted). “Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies.” Iron Arrow Honor Soc’y v. Heckler, 464 U.S. 67, 70, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983).
This case is moot because in their complaint plaintiffs challenged only the legality of the Navy’s alleged Thirds Policy, but even they admit that the Thirds Policy ended in 2001 and that the Navy now maintains no religious quotas. Plaintiffs nonetheless insist their claim remains live, but each of their three arguments fails.
First, as plaintiffs correctly point out, a defendant’s voluntary cessation of a challenged practice moots a case only if the defendant shows that: (1) “ ‘there is no reasonable expectation ... ’ that the alleged violation will recur,” and (2) “interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.” Davis, 440 U.S. at 631, 99 S.Ct. 1379 (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)). Plaintiffs argue that the Navy flunked condition one because it failed to prove that it wouldn’t reinstitute the Thirds Policy and condition two because it still uses the CARE Board. As to the first condition, because plaintiffs never allege that the Navy is likely to or even considering reinstituting the Thirds Policy, there is “ ‘no reasonable expectation ... ’ that the alleged violation will recur.” Id. (quoting Grant, 345 U.S. at 633, 73 S.Ct. 894). Plaintiffs point out that the Navy still has authority to reinstitute the policy, but “the mere power to reenact a challenged [policy] is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists. Rather, there must be evidence indicating that the challenged [policy] likely will be reenacted.” Nat’l Black Police Ass’n v. District of Columbia, 108 F.3d 346, 349 (D.C.Cir.1997). The record here contains no such evidence. Plaintiffs insist that the Navy’s continued defense of the now abandoned Thirds Policy amounts to evidence that the Navy will reenact the policy. In support, it cites our statement in Doe v. Harris, 696 F.2d 109 (D.C.Cir. 1982), that “when a complaint identifies official conduct as wrongful and the legality of that conduct is vigorously asserted by the officers in question, the complainant may justifiably project repetition.” Id. at 113. But this case differs significantly from Harris. There, the defendant expressly said it would commit the same alleged violation again under certain circumstances, giving the plaintiffs solid “evidence indicating that the challenged [policy] likely [would] be reenacted.” Nat’l Black Police Ass’n, 108 F.3d at 349. Here, by contrast, the Navy has never said it will reenact the Thirds Policy, and plaintiffs have not even alleged as much. As to condition two, the Navy’s continued use of the CARE Board is irrelevant because the Board no longer applies any type of religious quota system.
Second, as plaintiffs again accurately point out, a case is not moot if a court can provide an effective remedy. See Church of Scientology of Cal. v. United States, 506 U.S. 9, 13, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992). And according to plaintiffs, this court can provide a remedy, namely “a declaration that the Thirds Policy ... was unconstitutional, their rejection unlawful, and that an injunction be granted preventing its reimplementation.” Appellants’ Opening Br. 37. But because the Navy already eliminated the Thirds Policy and plaintiffs never allege that the Navy will reinstitute it, any injunction or order declaring it illegal would accomplish nothing — amounting to exactly the type of advisory opinion Article III prohibits. Of *5 course, if the district court’s sovereign immunity holding was incorrect, plaintiffs’ claim for “constructive credit” might defeat mootness, but because plaintiffs never argue this ground for avoiding mootness, we decline to consider it. See Carducci v. Regan, 714 F.2d 171, 177 (D.C.Cir.1983) (“[W]here counsel has made no attempt to address the issue, we will not remedy the defect....”). Our concurring colleague is correct that in Lesesne ex rel. B.F. v. District of Columbia, 447 F.3d 828 (D.C.Cir.2006), we considered an argument against mootness that was only “implied” on appeal, but explicit in the complaint. Id. at 833. But here, plaintiffs never raised their constractive credit claim as a ground for avoiding mootness, not even implicitly. Moreover, the Lesesne court never said it was required to consider the argument the plaintiff inadequately raised. Thus, while Lesesne certainly means we may consider arguments a plaintiff fails to raise against mootness, we need not do so, especially where, as here, it might force us to resolve a constitutional question.
Even were we to deem this case a live controversy, there is another reason why we would decline to consider plaintiffs’ claim for constructive credit. Because plaintiffs’ claim relies on their first being hired as Navy chaplains — a vital condition that has yet to occur — it is unripe. See Devia v. Nuclear Regulatory Comm’n, 492 F.3d 421, 425 (D.C.Cir.2007) (“[I]f a plaintiffs claim ... depends on future events that may never come to pass, or that may not occur in the form forecast-ed, then the claim is unripe.” (quoting McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 72 (1st Cir.2003))). The concurrence is concerned that delaying resolution of this claim may force these plaintiffs to a difficult decision about whether to reapply. By reaching the merits, however, we would be deciding an issue that will not arise unless plaintiffs are hired as Navy chaplains — something that may never occur. The claim is thus unripe.
Finally, plaintiffs argue that they challenge the Navy’s current hiring policy as well as its Thirds Policy. Plaintiffs’ complaint, however, focuses on the Thirds Policy. Of the four relevant counts, three challenge “the Navy’s chaplain accession goals,” yet the complaint itself states that the Navy already “abandoned its policy of providing goals for specific faith group clusters.” Compl. 18, 21, 23. The final relevant count alleges that “[t]he Navy has established and maintained an unconstitutional religious quota system.” Id. at 22. Even on appeal, plaintiffs devote only two paragraphs of their sixty-two-page opening brief to attacking the Navy’s current hiring policies, providing virtually no reasoning or citations. Appellants’ Opening Br. 50-51. We decline to revive this case by reading into plaintiffs’ complaint an argument not adequately presented. See Ala. Power Co. v. Gorsuch, 672 F.2d 1, 7 (D.C.Cir.1982) (“Courts have long declined to render decisions on important questions of far-reaching significance which have not been argued by the party who might benefit therefrom.”).
III.
For the reasons stated above, we remand this case to the district court with instructions to dismiss plaintiffs’ claim as moot.

So ordered.