# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 18, 2011                    Decided June 28, 2011

No. 09-7092

DISTRICT OF COLUMBIA,
APPELLEE

v.

CHIKE A. IJEABUONWU AND LAW OFFICES OF CHIKE A.
IJEABUONWU, LLC,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-00249)

*Jude C. Iweanoge* argued the cause for appellants. With him on the brief was *John O. Iweanoge II*.

*Carl J. Schifferle*, Assistant Attorney General, Office of the Attorney General for District of Columbia, argued the cause for appellee. With him on the brief were *Peter J. Nickles*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General.

Before: GINSBURG and GRIFFITH, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

Concurring opinion filed by *Senior Circuit Judge* RANDOLPH.

GINSBURG, *Circuit Judge*: The District of Columbia filed this suit to recover its attorneys' fees from Chike Ijeabuonwu, a lawyer who brought an administrative complaint against the District on behalf of a student with special educational needs. Under the Individuals with Disabilities Education Act (IDEA), a court may award attorneys' fees to the "prevailing party," whether it be the plaintiff or the defendant. The district court held D.C. was a prevailing party and awarded it attorneys' fees. For the reasons that follow, we reverse that judgment.

## I.   Background

Ijeabuonwu's client in the administrative matter was a student who lived in the District of Columbia and was eligible for special education under the IDEA, which guarantees "all children with disabilities" access to "a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). After evaluating the student in 2007, the District of Columbia Public Schools (DCPS) determined it could best meet this statutory requirement by paying for him to attend a certain private school.

In July 2008, after the student's first year there, the school convened a so-called multidisciplinary team (MDT) meeting, as required by the IDEA. Neither a DCPS official nor the student's parents were present at the meeting; the student was represented by Ijeabuonwu's brother, who is employed as an "education advocate" at Ijeabuonwu's law firm. The MDT recommended the student's psychological

therapy be increased by 30 minutes each week and that he be given "a comprehensive psychological eval[uation]," including psychological, educational, and social history assessments.

On September 9, 2008 Ijeabuonwu filed an administrative complaint — sometimes called a "due process complaint" — on behalf of the student and his mother. The complaint alleged the DCPS had not yet conducted the evaluation recommended by the MDT and also had failed to conduct an "appropriate triennial evaluation." For relief, Ijeabuonwu sought a "[t]imeline to evaluate" the student, additional meetings to discuss the evaluations, "compensatory education," attorneys' fees, and several specific declarations.

Nine days later Richard Nyankori, a Special Assistant to the Chancellor of the DCPS, faxed a letter to Ijeabuonwu authorizing "an independent comprehensive psychological evaluation (which includes cognitive, educational, and clinical components as well as a social history), and a psychiatric evaluation," to be done at the expense of the DCPS. Ijeabuonwu neither informed his client of the letter nor withdrew his administrative complaint, and on October 14 the parties proceeded to an administrative hearing.

Shortly thereafter, Hearing Officer Terry Banks issued a written order and decision stating "the only issue before [me] is DCPS' alleged failure to conduct psychological, educational, and social history evaluations that were ordered by the MDT on July 1st"; that issue, however, "was mooted by DCPS' prompt authorization of an independent comprehensive psychological evaluation." The hearing officer nonetheless went on to devote three paragraphs of commentary to the merits of Ijeabuonwu's complaint, concluding he had failed to show the DCPS was notified of

and had ignored the MDT's recommendations, and that the student "ha[d] suffered no educational harm as a consequence of the evaluations not having been conducted." Neither party appealed that decision.

D.C. then filed this suit against Ijeabuonwu to recover the attorneys' fees it had incurred in defending itself against his administrative complaint. The district court entered a summary judgment, ordering Ijeabuonwu to pay such fees as D.C. incurred once Ijeabuonwu had received Nyankori's letter, after which it had been unreasonable for Ijeabuonwu to continue pursuing the case to a hearing. *District of Columbia v. Ijeabuonwu*, 631 F. Supp. 2d 101, 106 (2009). Ijeabuonwu now appeals that ruling.

## II. Analysis

Although the American Rule is that parties bear their own attorneys' fees, the Congress has modified the rule in a number of civil rights statutes. Pursuant to the IDEA, for one, a court may award attorneys' fees

> to a prevailing party who [sic] is a State educational agency or local educational agency against the attorney of a parent who ... continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation.

20 U.S.C. § 1415(i)(3)(B)(i)(II). Addressing de novo the issue of law whether D.C. is a "prevailing party" in this case, we hold it is not. Because we reverse the judgment of the district court on that ground, we need not decide whether, as D.C. maintains, Ijeabuonwu's pursuit of an administrative hearing was unreasonable.

As both parties recognize, this case follows closely in the wake of our decision last term in *District of Columbia v. Straus*, 590 F.3d 898 (2010). The defendant Straus had filed an administrative complaint under the IDEA on behalf of a student seeking (1) an order requiring D.C. to pay for the independent psychiatric evaluation recommended by the student's assessment team, (2) a declaration that the delay in obtaining the evaluation had denied the student a free appropriate public education, and (3) attorneys' fees. *Id.* at 899–900. Within a week thereafter, Richard Nyankori of the DCPS sent Straus a letter substantively identical to the one he would later send to Ijeabuonwu. *Id.* at 900. Straus nonetheless pursued the matter to an administrative hearing at which, as here, Hearing Officer Banks presided. In a written decision, the hearing officer stated the "only issue" before him was the "alleged failure to conduct a psychiatric evaluation" as recommended by the MDT, which he concluded had been "mooted by DCPS' prompt authorization of an independent evaluation." *Id.* at 901. As in the precursor to the present case, neither party appealed, *id.* at 900, but D.C. filed suit in the district court seeking reimbursement of its attorneys' fees pursuant to § 1415(i)(3)(B)(i), *id.* That court held D.C. was not a "prevailing party" in the administrative proceeding because its own change of position was what had mooted the dispute, causing the case to dismissed, and we agreed. *Id.* at 900, 903.

We began our analysis in *Straus* with the Supreme Court's teaching in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 603–05 (2001), that to be a prevailing party "requires more than achieving the desired outcome." *Straus*, 590 F.3d at 901. Following *Buckhannon*, in *Thomas v. National Science Foundation*, 330 F.3d 486, 492–93 (2003),

we had identified three requirements for prevailing party status: There must be (1) "a court-ordered change in the legal relationship of the parties"; (2) a "judgment ... in favor of the party seeking the fees"; and (3) "judicial relief" accompanying the "judicial pronouncement." *Straus*, 590 F.3d at 901 (citing *Thomas*, 330 F.3d at 492–93) (internal quotation marks omitted). Only the latter two of these requirements apply when the party seeking fees is a defendant. *Id.* at 901.

In *Straus*, as here, the only contested issue was whether D.C. had obtained any "judicial relief" in the administrative proceeding as to which it was seeking to recover attorneys' fees. We answered in the negative because the hearing officer had dismissed the case based not upon its merits but rather upon the mootness the District itself had brought about. *Id.* at 901–02.

We decided *Straus* after the district court had issued its opinion in this case but before that court denied Ijeabuonwu's motion for reconsideration. In denying reconsideration, the district court said *Straus* "does not change the outcome" because in this case "the hearing officer did reach the merits of the student's complaint and resolved the issue in favor of the District."

On appeal Ijeabuonwu, of course, argues *Straus* is controlling. The hearing officer here, he points out, stated both that D.C.'s failure to conduct an evaluation was the "only issue" and that the Nyankori letter had rendered that issue moot; therefore, as in *Straus*, it is of no moment that the hearing officer also volunteered his opinion that the student had "suffered no educational harm."

D.C. attempts to navigate around *Straus* by emphasizing our observation there that the hearing officer's obiter dicta concerning the merits had begun with a counterfactual subjunctive statement ("The facts of this case *suggest* that even if DCPS had not authorized an independent evaluation, Petitioner *would have faced* an uphill burden of proving educational harm"), making clear that the hearing officer's later statement the student had "suffered no educational harm" was only his "speculation about what might have happened had DCPS refused to provide the evaluation." *Id.* at 901. Because the hearing officer here, the District continues, did not couch his comments upon the merits in the counterfactual subjunctive, he was squarely resolving the issue.

The District errs in implying our decision in *Straus* turned upon the tense in which the hearing officer couched his dicta. The underlying point was that in *Straus*, as in this case, the hearing officer recognized the want of an evaluation was the sole issue the student's attorney had raised before him and then determined the Nyankori letter had already resolved that issue. The counterfactual subjunctive in *Straus* reflected and reinforced that point but was not essential to it. What matters is the hearing officer's determination in each case that there was before him no live issue on the merits.

D.C. next argues the Nyankori letter did not moot the entire case because Ijeabuonwu's complaint sought not only an evaluation but also "compensatory education," which we have described as the belated provision of "educational services the child should have received in the first place," *Reid v. District of Columbia*, 401 F.3d 516, 518 (2005). As the District notes, in *Lesesne v. District of Columbia*, 447 F.3d 828, 833 (2006), we said an "explicit demand for compensatory education" is sufficient to forestall mootness, and so it is. In *Lesesne*, however, we reviewed a judgment of

the district court holding a plaintiff's IDEA claim was moot, *id.* at 833, whereas here the administrative order that adjudged the case moot is not before us; that order was not challenged administratively or otherwise appealed. Accordingly, just as D.C. itself argues concerning a different point, the law of the case doctrine precludes us from revisiting the hearing officer's conclusion the entire dispute is moot. *See United States v. Thomas*, 572 F.3d 945, 949 (D.C. Cir. 2009) ("a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, governs future stages of the same litigation" (internal quotation marks and alterations omitted)); *Kaseman v. District of Columbia*, 444 F.3d 637, 641–42 (D.C. Cir. 2006) (administrative IDEA proceeding and later fee claim are part of same case).

Finally, D.C. argues the res judicata effect of the hearing officer's having dismissed the administrative complaint with prejudice "is itself a form of 'judicial relief'" and therefore sufficient to make D.C. a "prevailing party." In response to a similar argument in *Straus*, we noted that in some cases the "[r]es judicata effect would certainly qualify as judicial relief," for example, where "it protected the prevailing school district from having to pay damages or alter its conduct." 590 F.3d at 902. In that case, however, res judicata provided no such protection because the District "had already agreed to pay for the requested evaluation—the only issue then before the hearing officer." *Id.*

D.C. would have us distinguish *Straus* upon the basis of the last-quoted clause: In this case, it says, res judicata gives the District meaningful relief because the student's claim for compensatory education is now precluded on the ground that it arose from the same nucleus of facts as did the claims the hearing officer held were moot. *See Apotex, Inc. v. FDA*, 393

F.3d 210, 217 (D.C. Cir. 2004) ("a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action," which "turns on whether [the two suits] share the same nucleus of facts" (internal quotation marks omitted)).  What D.C. overlooks is that the evaluation for which it agreed to pay is but a preliminary step; if the evaluation shows a need for compensatory education, then D.C. will still have to provide it.  The dismissal therefore "protected the District from nothing at all."  *Straus*, 590 F.3d at 902; *see also Drake v. FAA*, 291 F.3d 59, 67 (D.C. Cir. 2002) (res judicata "does not bar a litigant from doing in the present what he had no opportunity to do in the past").[*]

In consequence, we see no principled reason to depart from our holding in *Straus.*  As we said then:

> If the District were considered a prevailing party under these circumstances, then DCPS could ignore its legal obligations until parents sue, voluntarily comply quickly, file for and receive a dismissal with prejudice for mootness, and then recover [attorneys'] fees from the parents' lawyers.

---

[*] D.C. similarly contends the res judicata effect of the hearing officer's decision forecloses the student from renewing his claim related to the DCPS's "failure to conduct an 'appropriate' triennial evaluation."  As D.C. acknowledges elsewhere in its brief, however, any such claim would be moot because Nyankori's letter authorized the student to obtain a psychiatric evaluation, which was part of the triennial evaluation but not of the evaluation called for by the MDT.  If a claim for triennial evaluation would be dismissed as moot in any event, then res judicata is of no benefit to D.C.

*Straus*, 590 F.3d at 902.  To allow this practice would deter lawyers from taking IDEA cases and thereby deprive parents of their most effective means of enforcing the statute.

### III.  Conclusion

We hold the District of Columbia is not a "prevailing party" under the IDEA and, accordingly, is not eligible for an award of attorneys' fees.  The judgment of the district court is therefore

*Reversed.*

RANDOLPH, *Senior Circuit Judge*, concurring:  Although I have my doubts about the result in *District of Columbia v. Straus*, 590 F.3d 898 (D.C. Cir. 2010), I agree that the decision requires us to reverse.  But I do not agree with the majority's implicit criticism of the District for even seeking attorneys' fees.  Maj. Op. at 9-10.

The District invoked the portion of the statute allowing an educational agency to collect attorneys' fees from a parent's attorney if the agency is a "prevailing party" and if the attorney "continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation."  20 U.S.C. § 1415(i)(3)(B)(i)(II).  The District had ample grounds for its claim: the attorney, Chike Ijeabuonwu, did not tell his clients that the District had agreed to his demands, he persisted in his administrative complaint after the case thus became moot, and he admitted that he was prolonging the litigation in order to collect fees for himself.  That is the sort of conduct that deserves a sanction, and requiring Ijeabuonwu to pay attorneys' fees would have accomplished that end.

The portion of *Straus* the majority quotes at the end of its opinion seems to me incorrect.  *Straus* seemed to assume the District could collect attorneys' fees if it "ignore[d] its legal obligations until parents sue[d], voluntarily compl[ied] quickly, [and] file[d] for and receive[d] a dismissal with prejudice for mootness . . .."  Maj. Op. at 9-10 (quoting *Straus*, 590 F.3d at 902).  The majority states, as did *Straus*, that this would deter lawyers from taking IDEA cases.  But it would not.  It would deter only attorneys who sought to prolong the case after litigation became "frivolous, unreasonable, or without foundation"—and that is all to the good.